JOHN BANCHOR, for the use of James Cheever, *v.* JAMES GEORGE BELL.

Under art. 2796 of the Civil Code, which in this respect has altered the general commercial law, the joint owners of a ship or other vessel, are, in all transactions relative to the use of such vessel or for the objects of the association, as to third persons, commercial partners, and responsible as such *in solido.*

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

GARLAND, J. The defendant, and Dunn were owners of a steamer called the Daniel Webster, engaged in transporting passengers and personal property for hire, or on freight. The defendant was the resident partner in New Orleans, where he attended to the business of the concern; and Dunn acted as clerk on board. The plaintiff was a passenger on the boat at different times, and money being wanted for the use of the boat, as the clerk alleged, while on her voyage, he mentioned it to the captain, telling him that the plaintiff had money, who in reply told the clerk to obtain it if he could. It is certain that on two occasions money to a large amount was advanced by the plaintiff, and the captain and engineer say that it was used in paying charges on cotton taken on freight, it being customary in the trade in which the boat was engaged to advance those charges. On the 20th of March, 1840, a short time after these loans were made, Dunn made a due bill or promissory note in favor of Banchor for $1150, which he signed as clerk of the steamer, and on which this action is founded.

The defendant admits the ownership of the steamer, and the capacity of Dunn to act as clerk; but says that he had no right to borrow money for the use of the boat, and that if any money

was ever borrowed, it was not applied to the use of the boat nor of its owners, but to that of Dunn individually.

Captain Kelly states that sufficient funds were not supplied by the defendant for the use of the steamer; that he was frequently obliged to borrow from passengers; and that considerable sums were often necessary to make advances for charges on produce shipped on board, without which it could not have been obtained. On the part of the defendant it is shown, that it is not the custom for clerks of steamboats on the lower Mississippi to borrow money for the use of vessels on board of which they are employed, and that it is generally done by the captain when necessary; that no entry was ever made on the books of the boat of any money having been borrowed from the plaintiff; and that it appears from those books, kept by Dunn, that large balances in favor of the steamer were on hand at the time when it appears that the loans were made. Some time after the execution of this note or due bill, Dunn absconded, without rendering any account of the affairs of the steamer.

On the part of the plaintiff it is further shown, by the testimony of C. N. Harris, that money was loaned to Dunn in Vicksburg, at other times than those mentioned by Captain Kelly, and that a final settlement took place between Banchor and Dunn. It was said at the time the money was advanced, that it was for the use of the steamer; and when the settlement took place, Dunn promised to pay the amount of the note out of the funds of the boat, as soon as she returned from New Orleans.

The Commercial Court gave a judgment for the defendant, from which the plaintiff has appealed.

*I. W. Smith*, for the appellant. This is an action for money lent to the owners for the use of the boat. Dunn was a commercial partner of the defendant. Civ. Code, art. 2796. The court, in *Vigers et al.* v. *Sainet*, 13 La. 303, say: " Partnerships for the purchase and sale of personal property, and for carrying personal property for hire in ships or other vessels, are commercial partnerships by our laws." In *Burke* v. *Clarke*, 11 La. 209, that " a partnership for this purpose is a commercial one.". In *David* v. *Eloi*, 4 La. 110, that "whether the parties first enter into partnership to carry goods for hire, and then buy a vessel to enable them

to do so, or commence by buying a vessel, and then carry goods for hire, their obligations appear to be the same. They are bound jointly and severally."

The contracts of Dunn on account of the boat, had they been in his individual name, are binding on the defendant. In the case of *Vigers* v. *Sainet,* the suit was on a note made by the commissioners of the steamer Cuba for money borrowed by them. There was no inquiry as to what was done with the money for which the note was given. The court said : " We are bound to consider the partnership as a commercial one, and the stockholders are bound *in solido* for the debts of the Company ;" and the defendant was held liable, though not a signer of the note.

In the case of *Burke* v. *Clarke,* the court say, that " the part owners of a steamboat employed in carrying goods and passengers, are jointly and severally bound *for the acts of each other."* The action in that case was against both the owners of a steamboat, for a slave lost by one of the owners, who was the master, and each part owner was held responsible.

In *Philips* v. *Paxton,* 3 Mart. N. S. 42, the action was brought to recover a note signed by Paxton, in his individual name, for goods sold on account of Paxton & Gorton. The court said : " Taking it then as a fact, that the vendor of the goods for which this note was given, sold them *with a knowledge of the appellant's being a partner, and with an eye to his responsibility,* does the selling them to one of the partners by name prevent recourse against the other ? The name given to the association is of little importance ; they may call it what they please ; they may give it the denomination of such a one & Co.; of *two or more* of the partners ; of one, or of all ; or they may leave it without any. If they resort to the latter mode, as was done in the instance before us, their contracts are not, on that account, less binding. *It is too late for him, after hanging out these colors to mankind, to endeavor to escape from the responsibility which, in law, in equity, and in justice, he has incurred.* Qui sentit commodum, sentire debet et onus."

In *Winship et al.* v. *Bank of the United States,* 5 Peters, 566, Chief Justice Marshall, delivering the opinion of the court, decided, that " where money has been procured by a partner in whose

name the partnership business is conducted, by discounting a note endorsed by him on the credit of the co-partnership, a *subsequent misapplication of the funds does not exonerate the other partners.*" See also Bayley on Bills, 52.

In 3 Chitty's Commercial Law, 239, the principle is stated that *each partner is liable for the fraud of his partner, if the partner act professedly on the joint account, though in truth for his private emolument, and a third party had no notice of said fraud,* for one partner cannot excuse himself by saying that the other has entered into engagements of which he was totally ignorant, or has conducted himself fraudulently and dishonestly. See Watson, 175. Cowper, 814. *Bond* v. *Gibson,* 1 Campbell, 185. 2 Campbell, 561. 2 Esp. 524, 731. 1 East, 48. 7 East, 210. *Ridley* v. *Taylor,* 13 East, 175. 2 Starkie, 287, 347. 4 Maule & S. 475. 8 Ves. 542. 15 Ves. 286.

Such is also the law of France. Pothier, Contr. de Société, No. 101, says : " *Lorsque la dette a été contractée au nom de la société, elle oblige tous les associés quand même la dette n'aurait aucunement tourné au profit de la société : par exemple, si l' un des associés a emprunté une somme au nom de la société, quoi qu'il ait employé cette somme à ses affaires particulières et non à celles de la société. Le créancier qui a son billet signé ' et compagnie,' peut en demander le paiement à tous les associés ; car ce créancier ne pouvait pas prévoir l' emploi que l'associé ferait de la somme qu' il lui a prêtée pour la société. Les associés doivent s'imputer de s'être associés à un associé infidèle, de même qu'en pareil cas un commettant doit s'imputer d'avoir préposé à ses affaires une persone infidèle.*"

Pardessus, in his treatise on Commercial Law, vol. 4 No. 1024, declares : " *Lorsque les associés n'ont attribué à aucun d'eux en particulier le droit de signer les engagemens de la société, ce que fait chaque associé les oblige tous, parce que tous se sont constitués mandataires les uns des autres, et qu'ils sont censés avoir annoncé au public que ce qui serait fait avec l'un d'eux serait censé l'être avec tous. Ainsi dès q'un associé sans opposition des autres, dûment notifiée à celui avec qui il traitait, comme on a vu. N.* 1021, *qu' ils en avaient le droit a emprunté une somme, peu i mporte au prêteur que cet associé l'ait versée dans la caisse de l.*

*société, ou qu'il l'ait appliquée à ses affaires particulières, la société est toujours obligée. Nous avons vu N. 1020 qu'il en est de même du paiement qu'un débiteur de la société ferait à cette associé. C'est aux autres à s'imputer de s'être donné un associé infidèle de meme qu'un commettant de se reprocher l'abus de la confiance qu'il a donnée à son commis."*

C. M. *Jones,* contra. Dunn had no authority to borrow money for the use of the boat. Though a part owner, plaintiff must show that the money was necessary for the boat, and applied to its use, and neither was the case here. The decision below was correct. See Abbott on Shipping, 100–110, as to the power of the master to bind the owners for repairs and necessaries ; and 4 Barn. & Ald. 352, as to the officer authorized to borrow, or order repairs. Also *Ross* v. *Ship Active,* 2 Wash. Cir. Rep. 226.

GARLAND, J. The judge *a quo* considered this as a case coming exclusively under the commercial law, and that the fact of Dunn being a part owner of the boat, is not entitled to any weight in the decision of the case, although article 2796 of the Code provides, that all partnerships for carrying personal property for hire in ships or other vessels are essentially commercial. So far from the circumstance of Dunn's being a part owner of the steamer, not being entitled to any consideration, we are of opinion that it is a most important part of the case, and that in not giving it due weight, the inferior court has erred. The above mentioned article of the Code, and others make a material change in the relations and responsibilities of joint owners of ships and other vessels, from what they are under the commercial law, and we cannot disregard them. As regards third persons, in all transactions relating to the use of the ship or vessel, and to the responsibilities incurred in consequence of such use, or to facilitate the objects of the association, the joint owners are unquestionably commercial partners, and responsible as such. It, therefore, appears certain, that for money raised for the purpose of carrying on the partnership and making it profitable to the partners, each is liable *in solido,* and this court, in a number of cases, have so held them responsible. 4 La. 110. 11 La. 209. 13 La. 303. The judgment of the inferior court is in our opinion erroneous, and must be reversed.

In coming to this conclusion, we are not to be understood as expressing any opinion upon the question of how far the acts of one joint owner in selling or disposing of the ship or vessel to a third person, affect the right of property of another proprietor or co-owner.

The judgment of the Commercial Court is reversed, and this court, proceeding to give such judgment as in its opinion ought to have been given in the court below, decrees, that the plaintiff, Banchor, for the use aforesaid, do recover against the defendant, James G. Bell, the sum of eleven hundred and fifty dollars, with interest at the rate of five per cent per annum, from the 11th day of July, 1840, until payment, with costs in both courts.