Marshall, Ch. J.,
delivered the opinion of the court. — This was an action brought in the court for the first circuit and district for Massachusetts, against John Winship, Amos Binney and John Binney, merchants and partners, trading under the name and firm of John Winship, as indorser of several promissory notes, made by Samuel Jacques, jr. At the trial, the maker was called by the plaintiffs, and sworn. He was objected to by the defendants, as an interested witness, an instrument being produced purporting to be a release in the name of John Winship of all liability of the maker on the said notes. The operation of the said instrument, as a release of the notes in suit, was controverted by the plaintiffs. It is unnecessary to state the instrument, or to discuss the question arising on it, or on the competency of the witness ; because the court is divided on the effect of the instrument and on the competency of .the witness.
The witness testified, that he knew from general reputation that the defendant, John Winship, was concerned with the other defendants, Amos and John Binney, in the soap and candle business ; that Winship avowed the partnership ; that he had dealings with Winship, soon after its commencement, and supplied him with rosin, for which he sometimes gave a note, signed John Winship, which the witness always took on the credit of the Binneys. Winship and the witness were in the habit of lending their names to each other, and Winship always represented that the notes made or indorsed by the witness for his accommodation were for the use of the firm. Several other witnesses were examined on the part of the plaintiff to *355 prove the partnership, whose testimony was rendered unimportant by the production of the articles themselves. The defendants exhibited them, and they are in the following words :
“The memorandum of an agreement made this twenty-fifth day of September 1817, between Amos Binney and John Binney, of Boston, county of Suffolk, and John Winship, of ^Charlestown, county of Middlesex, all in the commonwealth of Massachusetts, for the manufacture of *- soap and candles, witnesseth : That the said Amos and John Binney agree to furnish for the above purpose, the sum or capital stock of $10,000, at such times as maybe wanted, to purchase stock or materials for carrying on the aforesaid manufacture ; and the said John Winship agrees on his part to conduct and superintend the manufactory, and to pay his whole and undivided attention to the business ; to manufacture, or cause to be manufactured, every article, in the best possible manner, and to use his utmost skill and exertions to promote the interest of the establishment, under the name and firm of John Winship, and without any charge for his personal labors ; and to keep a fair and regular set of books and accounts, open and subject at all times to the inspection of the parties interested in the concern, and annually, on the first day of October of each year, to make and exhibit a statement of the state of the business, the amount of purchases and sales, and the profits, if any, of the business, that have been made ; the expenses of conducting the business, and the profits, to be divided in the following manner : to say, from the profits is to be paid interest for the capital stock of $10,000, at the rate of six per centum per annum, all expenses of rent, labor, transportation, fuel and utensils, that it maybe necessary to purchase or have, and the remainder of the profits, if any, to be equally divided between the said Winship and Binneys, one-half thereof to the said John Winship, and the other half to A. and J. Binney; and in case no profit should be made, but a loss, then the loss is to be borne and sustained, one-half by the said A. and J. Binney, and the other half by the said John Winship. The agreement to continue in force for two years from the first day of October next ensuing, and then for a further term, provided all parties agree thereto. And to the true and faithful performance of the foregoing conditions, each party bind themselves to the other in the penal sum of $10,000.”
On the back of which were receipts signed by said W inship, acknowledging that he had received of Amos Binney $1000, on the 6th of September 1817, and *$4000, on the 9th of October 1817 ; and on the 27th of December 1827, he had in his hands $10,000, as said Amos’s propor- *- tion of the capital; and that he had received of John Binney $2500, on the 1st of October 1817, and $500, on the 3d of November 1817, and $500, on the 17th of November 1817, and $1500, on the 13th of June 1820, and on the 2d of June 1821, he had in his hands $10,000, as said John’s proportion of the capital stock.
They also gave in evidence a bond given by said Winship to said Amos, on the 25th of September 1817, in the penal sum of $10,000, with the condition following : “ The conditions of this obligation are such, that whereas, the above-bounden John Winship has this day made an agreement with Amos Binney and John Binney, both of Boston aforesaid, for the purpose of carrying on a manufactory of soap and candles on joint *356 account of the parties aforesaid ; and whereas, the said A. Binney hath engaged to indorse the notes given by the said John Winship, for the purchase of stock and raw materials for manufacturing, when necessary to purchase on a credit, and in consideration of which the said John Winship hath engaged not to indorse the notes, paper, or become in any manner responsible or security for any person or persons other than the said Amos Binney, for the term of two years from the first day of October 1817. Now, therefore, if the said John Winship shall faithfully observe the conditions, and wholly abstain fi-om becoming the surety or indorser of any person to any amount other than the same Amos Binney for the aforesaid term of two years from the first day of October 1817, then this obligation to be void and of no effect; otherwise, to remain in full force and virtue.”
The defendants also produced witnesses whose testimony furnished some foundation for the presumption, that the money arising from the notes, on which the suits were brought, was not applied by Winship to the purposes of the firm. Other testimony led to the belief, that a part, if not the whole of the money was so applied. All the notes in suit were discounted by and applied to the credit of John Winship.
*The testimony being closed, the counsel for the defendant insisted, 1st. “ That the said copartnership between them was, in contemplation of law, a secret copartnership, and did not authorize the giving of credit to any other name than that of the said Winship but to this the counsel for the plaintiffs did then and there insist before the said court, that this was an open or avowed, and not a secret copartnership. And the presiding justice of the said court did state his opinion to the jury on this point, as follows : “ That according to his understanding of the common meaning of ‘ secret partnership,’ those were deemed secret, where the existence of certain persons as partners was not avowed or made known to the public, by any of the partners. That where the partners were all publicly known, whether this was done by all the partners, or by one only, it was no longer a secret partnership ; for secret partnership was generally used in contradistinction to notorious and open partnership ; that whether the business was carried on in the name and firm of one partner only, or of him and company, would, in this respect, make no difference ; that if it was the intention of the Binneys that their names should be concealed, and the business of the firm was to be carried on in the name of Winship only ; and yet that Winship, against their wishes, in the course of the business of the firm, publicly did avow and make known the partnership, so that it became notorious who were the partners ; such partnership could not, in the common sense of the terms, be deemed any longer a secret partnership ; that if ‘ secret,’ in any sense, it was under such circumstances, using the terms in a peculiar sense. That,' however, nothing important in this case turned upon the meaning or definition of the terms ‘ secret partnership,’ since the case must be decided upon the principles of law, applicable to such a partnership, as this was in fact proved to be. That there was no stipulation for secrecy as to the Binneys being partners, on the face of the original articles of copartnership; and when those articles, by their own limitation, expired, the question what the partnership was, and how it was carried on for the future ; whether upon the same terms as were contained in the original *357 articles or otherwise ; was- matter of fact from the whole evidence ; that if the evidence was believed, Winship constantly avowed the partnership, and that the Binneys were *his partners in the soap and candle manu- p factory business, and obtained credit thereby.” But he left the jury L to judge for themselves as to the evidence.
Second exception. And the said counsel of the defendants did then and there further insist, that the said jury had a right to infer from the evidence aforesaid, notwithstanding the entries of the shipments in the invoice-book kept by said Winship, that the said Amos Binney and John Binney had no knowledge thereof; and therefore, could not be presumed to have adopted or ratified the conduct of said Winship making said shipments. But the presiding judge did then and there instruct the jury as follows : “ That whether the said Amos and John Binney, or either of them, knew of the said entries or not, was matter of fact for the consideration of the jury, upon all the circumstances of the case. That, ordinarily, the presumption was, that all the parties had access to the partnership books, and might know the contents thereof. But this was a mere presumption from the ordinary course of business, and might be rebutted by any circumstances whatsoever, which either positively or presumptively repelled any inference of access ; such, for instance, as the distance of place in the course of business of the particular partnership, or any other circumstances raising a presumption of non-access.” And he left the jury to draw their own conclusion as to the knowledge of the Binneys, of the entries in the partnership books, from the whole evidence in the case.
Third exception. And the said counsel of the defendants did then and there further insist, that by the tenor of the said recited articles of agreement and bond, the said Winship had no right Or authority to raise money on the credit of the said firm, or to bind the firm by his signature, for the purpose of borrowing money. But the presiding judge did then and there instruct the jury as follows : “That if the particular terms of the articles of copartnership were not known to the public, or to persons dealing with the firm, in the course of the business thereof, they had a right to deal with the firm in respect to the business thereof, upon the g-eneral principles and presumptions of limited partnership of a like ^nature ; and that any secret and special restrictions contained in such articles of copartner- *- ° ship, varying the general rights and authorities of partners in such limited partnerships, and of which they are ignorant, did not affect them. That the ease of Livingston v. Roosevelt, 4 Johns. 251, had been cited by the defendants’ counsel, as containing the true principles of law on this subject; and this court agreed to the law, as to limited partnership, as therein held by the court. That it was not denied by the defendants’ counsel, and was asserted in that case, that it was within the scope and authority of partners, generally, in limited partnership, to make and indorse notes, and to obtain advances and credits for the business and benefit of the firm ; and if such was, in fact, the ordinary course and usage of trade, the authority must be presumed to exist. The court knew of no rule established to the conirary. That the authority of one partner in limited partnerships did not extend to bind the other partners in transactions, or for purposes, beyond the scope and object of such partnerships. That in the present articles of copartnership, Winship was in effect constituted the active partner, and had general *358 authority given him to transact the business of the firm. That he had, so far as respects third persons, dealing with and trusting the firm, and ignorant of any of the restrictions in such articles, authority to bind the firm, to the same extent and in the same manner as partners in limited partnerships of a like nature usually possess, in the business, or for the objects within the general scope of such a firm. That the articles limited the partnership to a particular period ; after which it expired, unless the parties chose to give it a future existence. That no new written articles were proved in the case, and the terms and circumstances under which it was subsequently carried on, were matters to be decided upon the whole evidence. The fair presumption was, that it was subsequently carried on, on the same terms as before, unless other facts repelled that presumption. That the bond executed at the time of the execution of the articles ought to be considered as a part of the same transaction and contract.”
And the said counsel of the defendants did then and there further request the said court to instruct the said jury as follows, to wit :
*1. That if, upon the whole evidence, they are satisfied, that the copartnership proved to have existed between the defendants, under the name of John Winship, was known or understood by the plaintiffs, to be limited to the manufacturing of soap and candles, they must find a verdict for the defendants, unless they are also satisfied, that these notes were given in the ordinary course of the copartnership business, or that the moneys obtained upon them went directly to the use of the firm, with the consent of Amos Binney and John Binney ; and that if they are satisfied, that any part of these moneys did go to the use of the firm, with such consent, that then they must find a verdict for the plaintiffs for such part only, and not for the residue. And—
2. That if they are also satisfied, that the Messrs. Binneys furnished Winship with sufficient capital and credit for carrying on the business of the firm, no such consent can be implied, from the mere fact that Winship applied these moneys, or any part of them, to the payment of partnership debts.
But the presiding judge refused to give the instructions first prayed for, unless with the following Jimitations, explanations and qualifications, viz : That the defendants, as copartners, are not bound to pay the notes sued on, or money borrowed or advanced, unless the indorsements of the same notes and the borrowing of such money, was in the ordinary course of the business of the firm, for the use and on account of the firm. But if the said Winship offered the notes for discount, as notes of the firm, and for their account, and he was intrusted by the partnership, as the active partner, to conduct the ordinary business of the firm, and the discount of such indorsed notes was within such business ; then, if the plaintiffs discounted the notes, upon the faith of such notes being so offered by the said Winship, and as binding on the firm, the plaintiffs wex-e entitled to recover; although Winship should have subsequently misapplied the funds received from the discount of said notes; if the plaintiffs were not parties or privies thereto, or of any such intention. And if Winship boiTowed money, or procured any advances, on the credit and for the use of the firm, and for purposes connected with the busixxess of the firm, in like manner, and under like circumstances, and money ^ .. was lent or advanced on the faith and credit of the partnership, the -> money so *borrowed and advanced bound the partnership ; and they *359 were liable to pay therefor, although the same had been subsequently misapplied by Winship ; the lender not being party or privy thereto, or of any such intention. And with these limitations, explanations and qualifications, he gave the instructions so first prayed for. And the presiding judge gave the instruction secondly prayed for, according to the tenor thereof.
To these opinions and decisions of the court, the defendants excepted. A verdict was found for the plaintiffs, and judgment entered thereon ; which is brought before this court by writ of error.
The exceptions will now be considered. All must admit, that the opinion asked in the first instance by the counsel for the defendant in the circuit court, ought not to have been given. That court was required to decide on the fact as well as law of the case, and to say, on the whole testimony, that it did not warrant giving credit to any other name than that of John Winship. But, though this prayer is clearly not sustainable, the counsel for the plaintiff in error contends, that the instructions actually given were erroneous.
The first part of the charge turns chiefly upon the definition of a secret partnership, which is believed to be correct; but the judge proceeds to say, that if incorrect, it would have no influence on the cause ; and adds, “ that the case must be decided on the principles of law applicable to such a partnership as this was in fact proved to be “ that when the original articles expired by their own limitation, the question what the partnership was, and how it was carried on, for the future, whether upon the same terms as were contained in the original article, or otherwise, was matter of fact from the whole evidence.” The error supposed to be committed in this opinion is in the declaration, that nothing important in this case turned on the meaning or definition of the terms “ secret partnership.” This is not laid down as an abstract proposition, universally true, but as being true in this particular case. The articles were produced, and the judge declared that the case must depend on the principles of law applicable to such a partnership as this was in fact. This instruction could not, we think, ^‘injure the plain- ^ tiff in error. Its impropriety is supposed to be made apparent by L considering it in connection with the third exception.
The second instruction appears to be unexceptionable, and the counsel for the plaintiff in error is understood not to object to it.
The third instruction asked in the circuit court, goes to the construction of the articles of copartnership. The plaintiff in error contends, that those articles gave Winship no authority to raise money on the credit of the firm, or to bind it by his signature, for the purpose of borrowing money. The instruction given was, that if the particular terms of the articles were unknown to the public, they had a right to deal with the firm, in respect to the business thereof, upon the general principles and presumptions of limited partnerships of a like nature ; and that any special restrictions did not affect them ; that in such partnerships, it was within the general authority of the partners to make and indorse notes, and to obtain advances and credits for the business and benefit of the firm; and if such was the general usage of trade, the authority must be presumed to exist; but that it did not extend to transactions beyond the scope and object of the copartnership. That in the present articles, Winship was in effect constituted the active partner, and has general authority to transact the business of the firm, and *360 a right to bind the firm in transacting its ordinary business, with persons ignorant of any private restriction, to the same extent that partners in such limited partnerships usually possess. The amount of the charge is, that if Winship and the two Binneys composed a joint company for carrying on the soap and candle business, of which Winship was the acting partner, he might borrow money for the business, on the credit of the company, in the manner usually practised in such partnerships ; notwithstanding any secret restriction on his powers, in any agreement between the parties ; provided such restriction was unknown to the lender.
The counsel for the plaintiff in error has objected to this instruction with great force of reasoning. He contends very truly, that in fact scarcely any ^ , unlimited partnerships *exist. They are more or less extensive; J they may extend to many or to few objects; but all are in some degree limited. That the liability of a partner arises from pledging his name, if his name is introduced into the firm, or- from receiving profits, if he is a secret partner. No man can be pledged but by himself. If he is to be bound by another, that other must derive authority from him. The power of an agent is limited by the authority given him ; and if he transcends that authority, the act cannot affect his principal; he acts no longer as an agent. The same principle applies to partners. One binds the others, so far only as he is the agent of the others.
If the truth of these propositions be admitted, yet their influence on the case may be questioned. Partnerships for commercial purposes ; for trading with the world ; for buying and selling from and to a great number of individuals ; are necessarily governed by many general principles, which are known to the public, which subserve the purpose of justice, and which society is concerned in sustaining. One of these is, that a man who shares in the profit, although his name may not be in the firm, is responsible for all its debts. Another, more applicable to the subject under consideration, is that a partner, certainly the acting partner, has power to transact the whole business of the firm, whatever that may be, and consequently, to bind his partners in such transactions, as entirely as himself. This is a general power, essential to the well conducting of business, which is implied in the existence of a partnership. When, then, a partnership is formed for a particular purpose, it is understood to be in itself a grant of power to the acting members of the company, to transact its business in the usual way. If that business be to buy and sell, then the individual buys and sells for the company, and every person with whom he trades in the way of its business, has a right to consider him as the company, whoever may compose it. It is usual to buy and sell on credit; and if it be so, the partner who purchases on credit, in the name of the firm, must bind the firm. This is a general authority held out to the world, to which the world has a right to trust. The articles of copartnership are perhaps never published. They are rarely, if *« i ever, seen, except by the partners themselves. The *stipulations they -> may contain are to regulate the conduct and rights of the parties, as between themselves. The trading world, with whom the company is in perpetual intercourse, cannot individually examine these articles, but must trust to the general powers contained in all partnerships. The acting partners are identified with the company, and have power to conduct its usual business, in the usual way. This power is conferred by entering into the part *361 nership, and is perhaps never to be found in the articles. If it is to be restrained, fair-dealing requires that the restriction should be made known. These stipulations may bind the partners ; but ought not to affect those to whom they are unknown, and who trust to the general and well-established commercial law. 2 H. Bl. 235 ; 17 Ves. 412 ; Gow on Part. 17.
The counsel for the plaintiff in error supposes, that though these principles may be applicable to an open avowed partnership, they are inapplicable to one that is secret. Can this distinction be maintained ? If it could, there would be a difference between the responsibility of a dormant partner, and pne whose name was to the articles. But their responsibility, in all partnership transactions, is admitted to be the same. Those who trade with a firm, on the credit of individuals whom they believe to be members of it, take upon themselves the hazard that their belief is well founded. If they are mistaken, they must submit to the consequences of their mistake ; if their belief be verified by the fact, their claims on the partners, who were not ostensible, are as valid as on those whose names are in the firm. This distinction seems to be founded on the idea, that, if partners are not openly named, the resort to them must be connected with some knowledge of the secret stipulations between the partners, which may be inserted in the articles. But this certainly is not correct. The responsibility of unavowed partners depends on the general principles of commercial law, not on the particular stipulation of the articles.
It has been supposed, that the principles laid down in the third instruction, respecting these secret restrictions, are inconsistent with the opinion declared in the first; that in this case, where the articles were before the court, the question whether this was in its origin a secret or an avowed ^'partnership, had become unimportant. If this inconsistency really r¡js existed, it would not affect the law of the case; unless the judge had *- laid down principles in the one or the other instruction which might affect the party injuriously. But it does not exist. The two instructions were given on different views of the subject, and apply to different objects. The first respected the parties to the firm, and their liability, whether they were or were not known as members of it; the last applies to secret restrictions on the partners, which change the power held out to the world, by the law of partnership. The meaning of the terms “secret partnership,” or the question whether this did or did not come within the definition of a secret partnership, might be'unimportant; and yet the question whether a private agreement between the partners, limiting their responsibility, was known to a person trusting the firm, might be very important.
The proposition of the defendants in the circuit court was, that Win-ship had no right or authority to raise money on the credit of the firm, or to bind the firm by his signature, for the purpose of borrowing money. This can scarcely be considered as a general question. In the actual state of the commercial world, it is perhaps impossible to conduct the business of any company, without credit. Large purchases are occasionally made on credit; and it is a question of convenience, to be adjusted by the parties, whether the credit shall be given by the vendor, or obtained at the bank. If the vendor receives a note, he may discount it at the bank. If, for example, the notes given by Winship to Jacques, for rosin, to carry on his manufacture, which have been mentioned by the witness, had been *362 discounted in bank, it would not have been distinguishable from money borrowed in any other form. The judge said, that if it was within the scope and authority of partners generally, in limited partnerships, to make and indorse notes, and to obtain advances and credits for the business and benefit of the firm, and if such was in fact the ordinary course and usage of trade, the authority must be presumed to exist. Whether this was the fact or not was left to the jury.
564] Does anything in the articles of agreement restrain this general authority ? *The articles state the object of the company to be, the manufacture of soap and candles; the capital stock to be |10,000, which sum is to be paid in by Amos and John Binney ; John Winship to conduct and superintend the manufactory; the name of the firm to be John Winship ; the profit and loss to be divided. They are silent on the subject of borrowing money. If the fact that the Binneys advanced $10,000 for the stock in trade, implied a restriction on the power of the manager to carry on the business on credit, it would be implied in almost every case.
But the bond given by Winship to Amos Binney, which is admitted by the judge to constitute a part'of the partnership agreement, is supposed to contain this restriction. The condition of the bond recites, that “ whereas Amos Binney had engaged to indorse the notes given by the said John Winship for the purchase of stock and raw materials for manufacturing, when necessary to purchase on credit, in consideration of which, the said John Winship hath engaged not to indorse the notes, paper, or become in any manner responsible or security for any person or persons, other than the said Amos Binney.” “Now, if the said John Winship shall faithfully observe the conditions, and wholly abstain from becoming the surety or indorser of any person, to any amount, other than the said Amos Binney, then,” &c.
The agreement recited, but not inserted in this condition, that Amos Binney would indorse the notes of Winship, when it should be necessary to purchase on credit; while it implies that the power was incident to the act of partnership ; was not in itself a positive restriction on that power. The affirmative engagement on the part of Amos Binney, that he will indorse, is not a prohibition on Winship to obtain any other indorser. The exigencies of trade might require the negotiation of a note, in the absence of Mr. Binney, and this may have been a motive for leaving this subject to the discretion of the acting partner. If he has abused this confidence, the loss must fall where it always falls, when a partner, acting within his authority, injures his copartners. If, then, the agreement between Amos Binney and John Winship contains nothing more than is recited in the condition, it contains no inhibition on Winship to negotiate notes in the ordinary course of *business. The restriction on Winship is not in this recital, but in his engagement expressed in the condition of the bond. *565]
He engages not to indorse the notes, paper, or become in any manner responsible or security for any person or persons, other than the said Binney. The obvious import of this engagement is, that Winship will not make himself responsible for another. Had he made an accommodation note for Jacques, it would have been as much a violation of this agreement as if he had indorsed it. The undertaking is not to indorse notes for another. But this note is indorsed for himself. It is negotiated in bank, in the name of the firm, and the money is carried to the credit of the firm. Had not *363 Winship misapplied this money, no question would have arisen concerning the liability of his partners on this note. The stipulation in the bond, not to indorse or become security for another, would not have barred the action. But be this as it may, this stipulation between the parties is a secret restriction on a power given by commercial law and usage, generally known and understood ; which is obligatory on the parties, but ought not to affect those from whom it is concealed.
The counsel for the defendants in the circuit court then prayed an instruction to the jury, that if they were satisfied, that the partnership was known to the plaintiffs to be limited to the soap and candle business, they must find for the defendants ; unless they were also satisfied, that these notes were given in the ordinary course of the partnership business, or that the moneys obtained upon them went directly to the use of the firm, with the consent of Amos Binney and John Binney ; and that if they are satisfied, that any part of these moneys did go to the use of the firm with such consent, that then they must find a verdict for such part only ; and not for the residue. This instruction was not given as asked ; but was given with “limitations, explanations and qualifications.” The judge instructed the jury, in substance, that the defendants were not bound to pay the notes sued on, unless the indorsements thereon were in the ordinary course of the business of the firm, for the use and on account of the firm; but if they were satisfied, that the notes were so offered and discounted, and that the said Winship was intrusted by the partnership, as the active partner, to conduct the ordinary business of *the firm, and the discount of such indorsed notes was within such business, then the plaintiffs were *- entitled to recover, although Winship should have subsequently misapplied the funds, received from the discount of said notes ; if the plaintiffs were not parties or privies thereto, or of any such intention.
The plaintiffs in error contend, that the instruction ought to have been given, as prayed, without any qualification whatever. The instruction required is, that although the jury should be satisfied, that the money went to the use of the firm, they should find for the defendants; unless they should be also satisfied, that the consent of Amos and John Binney was given to its being so applied. That is, that a note discounted by the acting and ostensible partner of a firm, for the use of a firm, the money arising from which was applied to that use, could not be recovered from the firm, by the holder, unless the application was made with the consent of all the partners. The counsel for the plaintiffs in error is too intelligent to maintain this as a general proposition. He must confine it to this particular case. He is understood as contending, that under the secret restrictions contained in the bond given by Winship to Amos Binney, Winship was restrained from discounting these notes, even for the use of the firm ; and that no application of the money to the purposes of the copartnership could cure this original want of authority, and create a liability which the note itself did not create ; unless such application was made with the consent of all the partners. So understood, it is a repetition of the matter for which the third exception was taken, and is disposed of with that exception. The instruction, therefore, ought not to have been given as prayed. Still, if the court has erred in the instruction actually given, that error ought to be corrected. That instruction is, that if the notes were offered in the usual *364 course of business for the firm, by the partner intrusted to conduct its business, and were so discounted, and if such discount was within such business, then the subsequent misapplication of the money, the holders not being parties or privies thereto, or of such intention, would not deprive them of their right of action against the copartnership. We think this opinion entirely correct. It only affirms the common principle, that the misápplica**«'71 tion of funds raised by ’■'authority, cannot affect the person from J whom those funds are obtained.
We think there is no error in the opinions given by the judge to the jury. The court being divided, on the competency of Samuel Jacques as a witness, the judgment is affirmed, with costs and damages at the rate of six per centum per annum, by a divided court.