*Birchard, J.
In determiningwhetherajuryhas been misled by instructions of the court, in any given case, it becomes important to consider the evidence which called forth the instructions, in order that the bearing, which it might have had upon the minds of the jury may be understood and appreciated. In this case, it is claimed that Gano, Thoms & Talbott, by their private articles of association, had prescribed the mode of conducting their joint operations. Be this as it may, it is evident they had each and all departed from what are now claimed to be the written terms, and for a long period had so conducted as to justify third persons in treating them as general partners, and authorized to conduct the 'joint business which they were ostensibly engaged in, in a very different manner from that presented in their private agreement. The proof was, that they encountered difficulties in raising funds adequate to conduct successfully their joint operations, and that they had recourse to various means of obtaining loans. Among the shifts resorted to, the bill in question was prepared and given to Collins, in exchange for his paper, to be used by Gano, Thoms & Talbott, in procuring a discount at bank, or of some one else. The paper of Collins received in exchange for it, was immediately sent to .Gano and Thoms, by Talbott, to be used at Cincinnati. There was no evidence that they dissented from the proceedings. Notice was not given to Talbott, or any one else, of their dissatisiaction with it. The bill of exceptions state only that they did not use it, and the presumption, if any were to be raised, would be, not that the partner, Talbott, exceeded his authority, but that the paper could not be used, or was not needed by Gano and Thoms. It may be admitted, as a general rule of law, that one partner’, in cases of ordinary partnership transaction, can not bind his copartners by a mere accommodation acceptance, made in the name of the firm for the benefit of another person, so as to enable the holder, with knowledge of the facts, to recover upon it in a *601, 602 suit against the firm, without other proof, showing a subsequent *assent or a prior authority. This proof may consist of facts or circumstances inconsistent with the supposition that lie exceeded his authority, as in the case at bai’, of proof that all of the parties acted so as to show that each partner regarded his co-partner as acting within the scope of his authority, in attempting to raise funds to meet the joint necessity, by any means that would be most likely to facilitate their common object.
Take the whole case as it appeared before the jury, apply well-established legal principles, and wo think it will bo difficult to show wherein the jury were misled. One of the general principles, says Mr. Chief Justice Marshall (Winship v. Bank of United States, 5 Pet. 561), is, “ that the acting partner has power to transact the whole business of the firm, whatever that may be, and consequently to bind his partners in such transactions, as entirely as himself. This is a general power, essential to the well conducting of business, which is implied in the existence of a partnership. When a partnership is formed for a particular purpose, it is understood to be in itself a grant of power to the acting members of the company to transact its business in the usual way.” In the text of Mr. Justice Story (Story on Partnership, 150, 151), it is said, “each partner may bind the firm by contracts or engagements on behalf of the firm, in the ordinary trade and business of the firm, as by receiving- or borrowing moneys, or by drawing, or negotiating, or indorsing, or accepting bills and notes and checks, or other negotiable securities, or by doing any other acts, which are incident or appropriate to such trade or business, according to the common course and usages thereof.”
It matters not what may be the nature of secret articles of co-partnership, so far as strangers are concerned. They are rarely, if ever, published. The trading community look only to the general course of the acting partners; they judge from their daily intercourse with them of the extent of power which the articles confer. This firm was doing business upon credit. Largo facilities were wanted; and in November, 1837, ^various shifts and devises to obtain them, were adopted. Those facts wore particularly in evidence. The manner in which they dealt, which was in evidence, showed, in fact, all that tho world know relative to Talbott’s authority. It was what could be gathered from the common course and usage of that business. As only two portions *603 of the charge of the court are mentioned in the argument as being particularly objectionable, they will be noticed in the order presented by counsel. The first part objected to, is in these words: “ That acceptances for the mere accommodation of others, arc good and binding upon copartners, when the same are made by one of the copartners in the name of the firm, without intentional fraud, and for the benefit of the firm.” The bill in this case was accepted by Talbott, in the name of the firm, on whom it was drawn, and for the benefit of the firm, in good faith; the object being to raise money, which the firm needed. The question is: Had he the power lo so accept? The substance of the charge was a mere answer in the affirmative. The quotations from Story and 5 Peters sustain it. Counsel argue that if he could do this, he might give the obligation of the copartners to satisfy the debts of his friend; but the argument omits one element of the charge. If given for the friend, it would not be for the benefit of the firm; it would be for the friend's benefit. So in the case cited from 1 and 7 Wendell. The indorsements, then spoken of, were made for the benefit of third persons, not for the benefit of the firm, whose name^ were signed by one of its members; and that distinction is taken by Nelson, Judge, in the opinion, and it runs through all the cases cited. We can not allow a sentence to be separated, and such part only be taken as will pervert its meaning. It must all be taken together, and the moaning must be gathered from the whole of it. There is some apparent repugnancy in this part of the charge. It can not be that an acceptance was for the mere accommodation of others, and at the same time for the benefit of the firm of Gano, Thoms & Talbott. This repugnancy, however, could not have misled the jury. They *must have misunderstood the language in reference to the facts in evidence, and as tantamount to these words: An acceptance of accommodation paper for the benefit of the firm, the object being to raise money for the firm, will bind all the joartners, if executed by one partner only, in the partnership name.
If a partner may, in behalf of the firm, draw, indorse, negotiate, or accept bills, for the purpose of raising money — and that he may do it, there is no doubt — what is there that shall require him to receive money only in payment? Why shall he bo restrained from taking negotiable paper, when that will enable him to realize the money wanted, and no other mode will effect the ob *604 ject? We can give no sound reason why means may not be thus raised, when the joint business requires it, and we are unable to find any in the books.
The case cited from the law reports, is clearly distinguishable from this. That was a case where the partnership name was used for the benefit of another firm. In this the partnership name was used for its own benefit, in order to procure the name of another firm which stood better in the money mai’ket. It was substantially the same as using it to indemnify an indorser. And nothing more nor less was understood by the jury, than that this could be done by one partner for the benefit of all.
. It is said that the last instruction given was erroneous; that the true rule is as follows: “ The bona fide holder can recover upon the pajier, though it came to him from a person who had robbed it from the true owner, provided he took it innocently, in the course of trade, for a valuable consideration, and not overdue, and under circumstances of duo caution.” Wo find no fault with this rule; and if the charge of the court violates it, there must have been error. But if it was in substance the same, and the variation is only in the use of words and phrases, we would hardly reverse the judgment. Though it is generally safe to employ the language of the books in instructing a jury, it is not always the best way of enabling them to comprehend the principles by which they should be governed. With a *jury composed of sound lawyers, the language used by learned writers would doubtless be the best that could be omployed. They would know what was meant by “bona fide holder,” and “ by taking paper innocently in the course of trade," etc. ; and the judge, whose duty it might be tp instruct such a jury, would not feel the necessity of explaining the meaning, or of expressing himself in terms of more common use, and better understood by unprofessional men. But all jurors do not readily comprehend what professional gentlemen mean by such phrases. They do not, or at least it is not certain that they are aware that “ bona fide holder ” moans one who holds in good faith ; and “ by taking paper innocently, in the course of trade, and under circumstances of due caution,” we mean a taking it in ignorance of any fact that would vitiate it, and in payment of a debt, or for cash. Tot the meaning is the same. A man is not deemed ignorant of the cause that would vitiate such an instrument when in possession of circumstances sufficient to' *605 put him upon inquiry; but is deemed to have the knowledge that those inquiries would elicit. Counsel insist that the court should have used the phrases “bona fide holder,” “innocent purchaser,” “in the ordinary course of business,” or other equivalent terms, and complain that it was not done.»
The making of the complaint goes far to show the propriety of varying the language of the books in explaining matters of this nature to a jury, whom we may well suppose less familiar with the terms of our profession; for’ if lawyers do not know that to take a bill of exchange for cash advanced at the time, or in payment of a pre-existing debt, is to take it in the ordinary course of trade, what would a jury comprehend by the sentence? The truth is, that the law was correctly stated to the jury, and we have no reason to suspect that it was misunderstood or misapplied. Judgment affirmed.