Sorg & Busker *v.* Thornton et al.

---

PAUL J. SORG and WM. H. BUSKER, Partners as Sorg & Busker, *v.* GEORGE THORNTON ET AL.

T., P. & Co. had been in the habit of obtaining loans from the plaintiffs. On the admission of another partner the business of the firm was changed, and also the firm name to P. & Co., T. being still a partner. T. obtained a loan from plaintiffs, giving a note in the old firm name of T., P. & Co., and converted it to his own use, no knowledge of the change in the firm name being brought home to the plaintiffs, or of T.'s fraud to the defendants.

*Held*, that the plaintiffs might recover the amount loaned T. from the other partners.

CASE RESERVED FROM SPECIAL TERM upon the evidence certified by the judge.

The petition claims the defendants to be indebted to the plaintiffs for money loaned to them as partners in distilling whisky, at Hamilton, Ohio. Thornton, Dascher, and Potter composed the firm.

Dascher answers that he owes the plaintiffs nothing, and denies all indebtedness. Potter denies generally all the allegations in the petition, and insists that if any money was loaned by the plaintiffs it was for the individual benefit of the defendant who borrowed it, for which the copartners are not responsible.

The case was heard on submission, and all the questions arising upon the evidence were reserved to be heard in General Term.

It was in proof that Thornton and Potter, two of the defendants, had been partners in the tobacco business in Cincinnati, prior to February, 1869, and as such had dealings with the plaintiffs, being known to them as partners, under the firm name of Thornton, Potter & Co.

This copartnership was dissolved in the latter part of February, when a new firm was formed, composed of Thornton, Potter & Dascher, for the manufacture of whisky, at Hamilton, where the last-named defendant resided. They had commenced business as partners, and on the 12th day of May, 1869, Thornton called on the plaintiffs and represented to them that the new firm had on hand one hundred barrels of whisky ready for market, but needed $1,500 to purchase the necessary stamps required by the internal revenue law; that they were short of cash, though their new partner, Dascher, was worth $60,000, which was invested in real estate, and requested the plaintiffs to loan to the firm the amount.

After consultation with the parties, the plaintiffs having intimated that it would be inconvenient for them to advance the money, it was proposed by Thornton that they should

make their note for the amount, payable to the defendants in sixty days, and he would execute at the same time the note of the defendants for the same sum and payable at the same time. Relying upon the statements of Thornton, and believing the transaction to be *bona fide* on his part, and trusting to all the defendants for the security of the loan, the plaintiffs then made their note to the defendants, and received in return from Thornton a note of similar tenor, in the name of Thornton, Potter & Co.

Having possession of the note thus made, Thornton procured it to be discounted and received the proceeds, which it appears he did not apply to the benefit of his copartners, but having appropriated to his own use, shortly after left the city, to which he has not since returned. Potter and Dascher both deny that they authorized any loan to be made or that it was required for the purposes of the firm, no credit for the amount being found upon the books of the firm. They further state the partnership name agreed upon and published to represent the new firm was that of Potter & Co.; but other witnesses, who knew a partnership had existed in Cincinnati, under the name of Thornton, Potter & Co., that it had been dissolved and a new firm formed consisting of these defendants, who were engaged in distilling whisky, testified they had not heard or did not know the firm name had been changed.

STORER, J. It is evident from the testimony, as well as the admission of counsel in argument, that Thornton committed a fraud in obtaining the loan, but there is no pretense of any complicity on the part of the other defendants with him in the act. It is claimed, however, there could have been no recovery upon the note given to plaintiffs by Thornton, Potter & Co., as the partnership name of the defendants was Potter & Co., and by that designation alone a liability against the defendants could be created.

If this assumption is admitted it does not follow, we think, that this action is not well brought, for the plaintiffs declare

for money loaned and offer the note which was discounted by Thornton, he receiving the proceeds, only as evidence of the transaction.

We think it is immaterial whether the plaintiffs gave a check for the money borrowed, or furnished the means by which it was realized; the note was equivalent to a loan—it produced the same result the borrower desired to accomplish when the plaintiffs were asked to extend the accommodation. And such would seem to be the opinion of our Supreme Court in the case of *Gano & Thoms* v. *Samuels*, 14 Ohio, 592, where it was held that "an acting partner, for the benefit of his firm, and in order to raise money, might use the name of the firm by accepting a bill of exchange to be exchanged for the acceptance of another firm." If, however, a loan or its equivalent is proved to have been made to, or received by, one partner on the faith that all the partners are thereby benefited, and a note is given by the individual partner in a name which the other members have not adopted, the liability of all the members ought not to be denied if the note itself should be valueless.

The note could not extinguish the liability. It must be admitted that every member of a copartnership is authorized, by the relation he has entered into with the other members of his firm, to borrow money as one of the incidents of the copartnership itself, and this, too, if the partners were restricted by the partnership articles from borrowing money, if this was not known to the lenders at the time the loan was made.

The whole question is elaborately discussed, and the law announced in *Winship et al.* v. *Bank of the United States*, 5 Peters, 529, " that the *status* of copartnership itself holds out to the world the right of one partner to bind the firm; and it is on the general principle of commercial law, and not on the copartnership articles, that the other partners are liable." If, then, we assume the representations made by Thornton to be false, they must nevertheless bind his copartners. Story on Contracts, sec. 224; Lindley on Partnership, 250; *Rapp* v. *Latham*, 2 B. & A. 795.

The case before us resolves itself into these questions:

*First.* Did' the plaintiffs loan the money, sought now to be recovered, to Thornton for the benefit and on the credit of all the defendants who are admitted to have been partners in business, and was it within the scope of his authority to do so?

*Second.* Did the plaintiffs advance the money to Thornton on the supposition that the proper firm name was signed to the note he gave, or did they not rather rely on the credit of all the partners whose names they knew, one of whom was represented by Thornton to have put $60,000 of capital in the new firm?

*Third.* Were there any facts connected with the transaction between the plaintiffs and Thornton that should have put them on their guard as to the truth or falsity of his representations?

*Fourth.* If Thornton, as is admitted, committed a gross fraud, who shall suffer for his acts, the defendants, his copartners who held him out to the world as their agent, to act for the interest of them all, and in every proper case to create a firm liability, or the plaintiffs, who, confiding in his representations, however false they were, advanced the money sought to be recovered?

On the whole case we feel compelled to resolve each proposition in favor of the plaintiffs, and render judgment against the defendants for the amount demanded.