### B. F. POWELL v. FLOWERS & McPHAIL.

(Filed 13 October, 1909.)

**1. Partnerships—Contracts—Scope of Authority—Warranty.**

During the continuance of a partnership for building purposes, a warranty of material and construction given by one partner for the purpose of obtaining a payment from the owner after the completion of a house contracted for by the partnership, is within the scope of the power of the partnership relations; and in the absence of bad faith by the partner giving it, or notice thereof by the owner, it is binding upon the other partner.

**2. Same—Innocent Third Persons.**

A misnamed "guaranty contract" given by one partner in the scope of his partnership authority, without the knowledge of the other, being in effect but a continuance of a warranty of material and construction after the completion of a house contracted to be built by the partnership, is binding upon such other partner as against the rights of the owner, though it may have been improvidently made and entailed a loss on the partnership.

APPEAL from *W. R. Allen, J.,* June Term, 1909, of SAMPSON.

His Honor submitted the following issues to the jury, who responded to them as set out:

1. "Has there been a breach of the guaranty described in the complaint?" Answer: "Yes."

2. "If so, what damage is the plaintiff entitled to recover on account thereof?" Answer: "$235."

3. "Is the plaintiff indebted to defendants on account of the contract price for erecting his building, and in what amount?" Answer: "$135."

4. "Did the defendant McPhail have any knowledge of the guaranty contract made by the defendant Flowers?" Answer: "No."

• The question presented by this appeal is thus stated in the record:

The only matter in controversy is whether, on the pleadings, evidence and verdict, the plaintiff is entitled to have judgment against both the defendants or whether he was entitled to judgment against the defendant Flowers alone. The facts bearing upon this question are as follows:

The defendants, Flowers & McPhail, were partners, engaged in contracting for and building houses, under the firm name of Flowers & McPhail. Flowers did most of the actual work and collected most of the money, but McPhail did some of the work, made some of the contracts and collected some of the money. They had no written contract of partnership, and the partnership agreement was oral and general in its terms.

On 7 October, 1902, while said partnership was in force, Flowers contracted, in writing, in behalf of said firm, with the plaintiff to erect for him a storehouse in Clinton, N. C., for the price of $1,750, to be paid in installments at certain stages of the work. This contract was signed "Flowers & McPhail." The first payment of $500 was made to McPhail before the completion of the building, and other payments, to the amount of $1,015, were made to Flowers before and at the time of the completion of the building. After the building was completed there was still unpaid on the contract price $235. Almost three months after the completion of the building, Flowers demanded

the balance of the contract price.   After some controversy the plaintiff paid Flowers $100 and Flowers gave to plaintiff a paper writing, in words and figures as follows:

### "GUARANTEE OF CONSTRUCTION.

"We agree that we will be responsible for any damage to B. F. Powell that he may sustain, that shall be the direct result of improper or poor construction of the store building erected by us. This guarantee to cover a period of five years from 1 January, 1903.                        (Signed)    FLOWERS & McPHAIL."

This guarantee was executed about three months after the completion of the building and about six months before the partnership of Flowers & McPhail was dissolved.

The jury found that there had been a breach of this guarantee; that the plaintiff had been damaged thereby $235; that the plaintiff was still due on the contract price $135, and that McPhail had no knowledge of the execution of the guarantee or of its existence until a short time before the commencement of this action.

This action was commenced 8 October, 1907.   Upon the rendition of the verdict, the plaintiff tendered judgment in his favor against both the defendants for $100, with interest from 21 June, 1909, and costs.   The defendant McPhail contended that plaintiff was entitled to judgment against the defendant Flowers alone.   His Honor refused to sign judgment in accordance with plaintiff's contentions, and the plaintiff excepted and appealed to this Court.

The contract attached to the complaint contained this stipulation: "Said Flowers & McPhail guarantee said roof not to leak; . . . and should any leak be found in said roof within one year after its completion, they agree to repair the same and effectually stop all leaks, etc."  And it was also stipulated that all work was to be done in "first-class workmanship manner," and all materials furnished by defendants.

*F. R. Cooper* for plaintiff.
*H. A. Grady* for defendant.

MANNING, J., after stating the facts: The defendant McPhail rests his defense against liability for the damages assessed by the jury for the improper and poor construction of the store building upon two grounds, viz.: (1) that the contract of warranty was executed without his knowledge or consent, and (2) that it was not within the scope of the partnership agreement and not

necessary in the ordinary and usual manner of conducting the business of the partnership.   We do not think either ground of defense can avail the defendant.   The partnership between the defendants was formed for the purpose of contracting for and building houses, was general in its terms, and both partners actively participated in the partnership undertakings.   Each partner, by virtue of the partnership relation, was a general agent for the other as to all matters within the scope of the partnership dealings, and had communicated to him, by virtue of that relation, all authorities necessary for carrying on the partnership.   George on Partnership, p. 212; Story on Partnership, sec. 101; 1 Bates on Partnership, sec. 315; 1 Lindley on Partnership, p. 124; *Winship v. Bank,* 5 Pet., 529; *Wilkins v. Pearce,* 5 Denio (N. Y.), 541; *Cotton v. Evans,* 21 N. C., 284; *Abpt v. Miller,* 50 N. C., 32; *Carter v. Beaman,* 51 N. C., 44; *Long v. Carter,* 25 N. C., 238.

It is decided by the cases above cited, and must necessarily follow from the principle announced, that the invalidity of an act of one partner does not arise from a want of power nor from the absence of actual knowledge or assent of the other members of the partnership, but from the bad faith of such partner by the perversion of his power for his "several advantage" and from the knowledge of him with whom he deals of such bad faith.   There is an entire absence of evidence in this case that the giving of the warranty by the partner, Flowers, was for "his several advantage," or that it was given by perversion, in bad faith, of his authority.   That it was given without the knowledge of the defendant McPhail is certainly no proof of bad faith in Flowers. The contract simply warranted, for a specified time, the durability of the materials and workmanship used by the partnership in constructing the building; was executed in the name of the partnership and concerning a matter of joint enterprise.   It follows, therefore, that the defendant McPhail must be conclusively fixed, as against the plaintiff, with a knowledge of the terms of that contract.   "Thus both partners are authorized to treat for each other in everything that concerns or properly belongs to the joint trade."   *Carter v. Long, supra.*   Can it be said that it is beyond the scope of the implied power of one member of a partnership, formed for the purpose of constructing stores and other buildings, to warrant the quality of its workmanship and the durability of its materials used in a building constructed by it? The contract, in this case, contained both, and the defendant McPhail collected a part of the price.   The misnamed "guaranty contract" simply extended the duration of the warranty.   The partners engaged to erect the building for plaintiff, of proper

materials and in workmanlike manner. Whatever pertained to the carrying out of this contract concerned a joint enterprise, and the power, implied in each partner, was coextensive with any act of either partner in its furtherance. That after events demonstrated that the particular contract was unwise and entailed a loss upon the partnership is wholly insufficient to vitiate the act as to strangers. "In such a case there is a loss to fall on one of two innocent persons, and the question is, which of them ought to bear it? Manifestly, he who entrusted the power. It was susceptible of abuse, and that he knew when he conferred it. It is not, in point of form, exceeded; and if it has been employed for a different purpose than that for which it was created, that is a risk that must have been seen and undertaken from the beginning." *Cotton v. Evans, supra.* The plaintiff was therefore entitled to judgment upon the verdict against both defendants, and this result is not changed by any fact found by his Honor. In declining to render judgment against the defendant McPhail there was

Error.