### No. 9244.
### Orleans Appeal

### JULIUS S. COHN & CO., Assignee, SIMMONS, COHN & CO., Appellant, v. DRENNAN & HILLCOAT, ET AL.

(November 17, 1924, Opinion and Decree.)
(January 13, 1925, Decree Supreme Court Writ of Certiorari and Review Granted.)
(See 158 La. 480, 104 South. 214.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Partnership—Par. 419.**

An agreement to share profits creates a presumption of partnership.

(Civil Code, Art. 2801. Editor's note.

2. **Louisiana Digest—Partnership—Par. 59, 61, 65.**

A participation as principal in the management of a joint adventure under an agreement to share profits creates the relation of partnership and imposes liability as such.

Appeal from Civil District Court, Division "B". Hon. Mark M. Boatner, Judge.

These are suits for collection of open accounts.

Judgment for plaintiff. Defendants appealed.

Judgment amended.

Meyer S. Driefus, Chas. J. Rivet, attorneys for plaintiff and appellee.

T. S. Walmsley, Monroe & Lemann, attorneys for defendant and appellant.

---

WESTERFIELD, J. Ralph W. Drennan and Robert W. Hillcoat were sued by Julius S. Cohn & Company, and Shushan Bros. & Company, local merchants, in separate actions on open accounts, in each of which the plaintiffs allege that the defendants are liable for the accounts sued on as commercial partners. The defense in each case is, in effect, a general denial on Hillcoat's part. No appearance being made on Drennan's behalf. One suit, that of Shushan Brothers & Company, was allotted to Division "A" of the Civil District Court and resulted in a judgment in that division recognizing the partnership relation between the defendants and holding them liable *in solido*. The other suit was allotted to Division "B" of the Civil District Court and in that division it was held that Drennan alone was responsible on the ground that the merchandise for the payment of which the plaintiff sued was bought by Drennan alone as his contribution to the joint venture, the character of which the court found it was unnecessary to determine. Both cases were appealed and in this court consolidated.

Drennan has not defended either suit, consequently we have only to consider Hillcoat's responsibility.

We shall first consider the judgment of our learned brother of Division "A" of the Civil District Court, for if we can agree with him, we shall be spared the labor involved in the determination of the more complex question of partnership *vel non*.

We quote the following from the reasons for judgment given by our brother below:

"The plaintiffs argue that they have proved a partnership in fact; for they say Hillcoat agreed to furnish money to pay the expenses of carrying on a common enterprise, and Drennan agreed to furnish the goods which were to form its stock-in-trade and his services in disposing of them, and the profits were to be divided; so making a typical case of partnership within the definition of C. C. 2801.

"However, I need not decide the point; for, granting that there was a partnership between Drennan and Hillicoat, the plaintiffs had no contract with it and furnished it nothing; they furnished to Drennan what Drennan was obligated to furnish to the partnership as his contribution to its capital; and Drennan, not the partnership, is their debtor. This question arose in Wells vs. Seiss, 24 La. Ann. 178. There two of three partners, being bound to furnish a sum of money for their share of the capital of the partnership, borrowed it from the plaintiff, and, notwithstanding the money went into the treasury of the partnership and was used for its purposes, the partnership was held not to be liable. In Smith vs. Senecal, 2 R. 456, on similar facts the same rule was applied; and to the same effect is Nathan vs. Gardere, 11 N. S. 265."

We are in complete accord with the conclusions of law given in the able expression of reasons for judgment from which we have quoted but with every disposition to credit the findings of fact under familiar principles of appellate procedure we can find no support in the record for the conclusion that Drennan agreed to furnish merchandise as his contribution to the

joint adventure. In the first place no amount of merchandise is mentioned and surely Drennan would hardly agree to buy an indefinite amount and besides some of the merchandise was paid for by Hillcoat and the payment of other items guaranteed by Hillcoat. Drennan bought on his own credit very little for, as he states, he had a very limited credit. What he did agree to do was to use his credit, as far as it would go, in the interest of joint enterprise and to give his time and talents.

Drennan testifies that merchandise was to be obtained upon the credit of both Hillcoat and himself:

Q. What arrangement did you have with Mr. Hillcoat with reference to the purchase of the merchandise and sale of same?

A. Part of the merchandise was secured on my own credit and part of the merchandise was guaranteed by Mr. Hillcoat.

And at another point in his testimony:

Q. Was there any limit in any way imposed on you as to how much goods was or was not to be paid for by Mr. Hillcoat at any time?

A. We discussed approximately the amounts of merchandise, yes.

Q. Do you mean in regard to the guarantee or in regard to everything you were taking?

A. We discussed the amount of merchandise I was taking on my own credit and the amount guaranteed on Mr. Hillcoat's credit.

Hillcoat testifies:

Q. Did you guarantee any of the accounts of Hillcoat & Drennan?

A. I guaranteed two specific accounts, which Mr. Drennan came to me and said he could not get the goods, and I wrote letters guaranteeing those specific amounts of money, and no more.

We are forced to conclude that our learned brother fell into error and we ad-

vance to the consideration of the question of partnership *vel non*.

It was long the settled rule that any participation in the profits of an enterprise constituted a partnership particularly as to liability to third persons. In the English case of Grace vs. Smith, 2 W. B. I. 998, decided in 1775, this doctrine was first announced and for nearly a hundred years was the law in England, though it was not always followed with enthusiasm, as appears from the following statement of Lord Eldon in *Ex parte Harper*: "It is clearly settled, though I regret it, that if a man stipulates that he shall have, as the reward of his labor, not a specific interest in the business, but a given sum of money, even in proportion to a given quantum of the profits, that will not make him a partner; but if he agrees for a part of the profits, as such, giving him a right to an account, he is, as to third persons, a partner."

In Louisiana under the Code of 1825 (the provisions relating to partnership are not found in the Code of 1808) the same rule prevailed for many years. To quote Chief Justice Merrick:

"If we examine such Articles of the Civil Code of 1825, as seem applicable to the case, we shall find that the provisions of the common law on this subject seem to have been adopted *ex industria* by the Legislature. They were not contained in the Code of 1808, and would seem to have been introduced for the purpose of rendering the law of Louisiana on this subject harmonious with that of our sister States."

In the leading case of McDonald vs. Millaudon, 5 La. Ann. 403, decided in 1833, where the rule of law was held to be the same as the common law, the court observed:

"But this case cannot be decided alone on the provisions found in the Civil Code on partnership. That work guarded against the inference of the non-existence of other rules to which courts should recur for the decision of cases before them, by a declaration that its provisions 'apply to commercial partnerships inasmuch only as they do not contain anything contrary to the laws and usages of commerce.' When the tribunals of this country were first called on to interpret this, and a similar provision in our law, there was great doubt to what laws and usages of commerce, reference was thus made. It was finally concluded, though not without hesitation, that they must have had in view the usages and laws prevailing in our sister States, unless these laws and usages conflicted with the positive legislation of Spain, or were in opposition to local usages prevailing in Louisiana. Whatever difficulty attended this decision when first made, there can be none in following it now. A considerable time has elapsed since it was made public. Contracts almost innumerable have been executed in reference to it. Rights have been repeatedly adjusted under its authority; property to a large amount acquired in relation to it; and stranger than all these, the Legislature of the State by their silence on the subject, have authorized the belief that the court correctly interpreted the previous expression of their will. We must, therefore, look to the law merchant of the United States, for the consequences attending acts such as are proved in this case, on the defendant. Then, as has been already stated, the question is not susceptible of doubt in relation to strangers contracting with the firm, though as between the parties themselves a different rule may prevail, or one at least modified in many important particulars. It is unnecessary to cite all the cases in which the doctrine has been recognized. One will suffice. The Supreme Court of the United States has lately declared the rule to be perfectly settled, that a party who shares in the profits, although his name be not in the firm, is responsible for its debts. In the present case the defendant contracted for these profits, and received them. 5 Peters, 561."

Incidentally the court in the last cited case found the law of Spain to be in accord with the common law.

It was therefore practically the universal rule that an agreement to share profits involved a liability to third persons for losses

and created the relation or status of partnership. The reason for the rule was that "if any one takes part of the profit, he takes a part of that fund on which the creditor of the trader relies for his payment". Both the reason and the rule were severely criticised though adhered to with customary British tenacity, but in 1860, in the English case of Cox vs. Hickman, 8 H. L. Cos. 268, the entire doctrine was overthrown and profit sharing as the acid test of partnership abandoned. Louisiana followed suit and in the case of Chapfraux & Ager vs. Price, Hine & Tupper, 29 La. Ann 176, decided in 1877, the Millauam case and others which followed it were overthrown. Whatever may be said of the old rule it was very easy of application for the sole question was profit sharing *vel non*. In this respect it had a great advantage over the present situation in which each case rests upon its own facts and profit-sharing once so decisive of the issue is now only presumptive, one element suggestive of partnership in no sense conclusive.

The rule established in the Price, Hine & Tupper case is thus stated by Judge Manning:

"The general principle we educe from this discussion, and which we consider control the present case, are, that a community of interest is the basis of every partnership; but it is not correct to say that every community of interest necessarily constitutes the relation of partnership. Participation in the profits will ordinarily establish the existence of a partnership, in the absence of all other opposing circumstances, between the participators in favor of third persons, but does not necessarily produce that effect. The fact that there is participation is presumptive proof that there is a partnership, but, like all presumptions, is liable to be overcome by circumstances. The rule does not outweigh or overcome or demolish the circumstances, but the circumstances control the rule, and can repel the presumption created by it. The foundation of the rule is manifestly artificial. In adjusting it to the circumstances of each case you do not dislocate any part of the legal edifice erected upon it, but adapt each of them to the other so as to produce symmetry. The circumstances of each case must guide the court, and if in considering them the participation in the profits is clearly shown to be in the character of an agent or employee, the presumption of partnership is repelled."

The partnership relation under the modern interpretation depends entirely upon the intention of the parties. This was always the rule as to partnership *inter se*.

Intention, however, means legal and not the expressed intention for a partnership rose by any other name will "smell as sweet".

In Corley vs. Broad, 29 La. Ann. 355, the court said:

"The only reason for doubting the existence of the partnership arises from the express declaration of the parties that no partnership was created by the act of association. They certainly did enter into an association, furnishing thereto specified capital, agreeing to divide profits and losses in fixed proportions, and engaging to carry freights and passengers for hire. This, under our law (R. C. C. 2796), certainly constituted a commercial partnership, and made the associates liable solidarily for the debts of the association. When there exist all the conditions which, by law, create a legal relation, the effects flowing legally from such relation will follow, whether the parties foresaw and intended them or not. Thus where a man transfers to another for a sum of money, and absolutely, the ownership of a thing belonging to him, the contract between them is that of sale, and all the legal consequences of that relation will follow, even though the parties declare it not a sale, but some other contract. The fact that the parties had made stipulations between themselves as to their liability for each other's debts, or as to the proportion of their several responsibilities, cannot affect third persons, even had these stipulations been within the knowledge of such third persons."

In Cameron et al. vs. Railway Co., 108 La. 83, 32 South. 208, the court held:

"Partnership, no doubt, results from intention, but the question in any given case is, what is the intention of the parties? If, by their representations, dealings and conduct, it appears that they have agreed to everything that, as a matter of law, is necessary to constitute a partnership, and that, by reason of the rights which they have secured to, and the obligations which they have imposed upon, themselves, they occupy towards each other the relation of principals and really share the profits of the business in which they are engaged in that relation, and not as an employer and employee, it must follow that the business is theirs, and they are liable for the obligations incurred for its purposes for that reason, and the disclaimer, in their contract, of the intention to enter into the partnership relation, and the assertion, thus contradicted, that they occupy, or intend to occupy, the relation of employer and employee, are not conclusive as to third persons."

In Ruling Case Law, Vol. 20, p. 823, we find the following expression concerning the uncertainty of jurisprudence:

"No one fact or circumstance can be taken to be a conclusive criterion as to the existence of a partnership. The tests by which its existence may be determined has long been a matter about which the courts have differed, and their views have undergone changes from time to time and rules formerly approved have become obsolete and new tests have been announced as a means of determining whether a particular association constitutes a partnership. A part of the confusion here appears to be due to a lack of precision in the language of the jurists in their efforts to express in words subtle distinctions which have been compared with metaphysical abstractions. * * * The result is that the decisions in both England and the United States are so conflicting on the subject that to reconcile them is impossible."

We deduce from the foregoing references the fact that there is no rule for measurement of the extent of participation in a joint enterprise which determines the partnership relation. The facts and circumstances of each case must decide the issue. With these general observations in mind we now approach a consideration of the facts of this case.

We premise our discussion of the facts with the statement that there was an agreement between the parties to share profits thus giving rise to the presumption of partnership. Was this presumption overcome by the special circumstances of this case is the question for consideration.

Drennan, a salesman, was convinced that a profitable business might result from buying certain merchandise in New Orleans and selling it in Mexico. He tried to get Hillcoat to advance him some money ($1,200.00) apparently as a loan to enable him to get the merchandise for export. Hillcoat at first refused and afterwards agreed to put up the money, but insisted upon getting one-half the net profits of the venture. It was also agreed that Hillcoat was to receive his money back out of the first money realized from sales. The goods were bought, some on Drennan's credit and some on Hillcoat's guarantee of payment, but Drennan dealt only in his name. Every time Drennan made a purchase he sent a copy of the invoice to Hillcoat. Hillcoat kept the books and received all the proceeds of sales which were sent by Drennan from Mexico. He paid some bills with a check on an account styled R. W. Hillcoat & Co., though there is no explanation of what partnership this account has reference to. It was suggested in argument that since the first of these checks bears the number 303 the checks must have been drawn upon an account belonging to another partnership of which Hillcoat was a member. This is only a surmise and it is extremely unlikely that able counsel would have left this feature of the case to surmise if it were susceptible of proof. Be that as it may, we must take the record as we find it. Some of the sales were made on credit and notes given which were sent to Hillcoat. Hillcoat discounted these notes and when the makers of some of them failed to

pay he made good the amounts to the discounting bank. There were some goods which Drennan was unable to sell after shipping to Mexico and they were turned over to Hillcoat's agent in Mexico for sale. Counsel insists that Hillcoat was only a creditor of Drennan for the money he put up, which, incidentally, was increased to $2,200.00 by the requirements of the enterprise and the consent of Hillcoat and an agent of Drennan in everything he did in the interest of their joint adventure. We cannot agree with counsel, being of opinion that the presumption of partnership arising from the agreement to share profits has not been overcome by the circumstances of this case and we conclude that Hillcoat is liable as a commercial partner.

For the reasons assigned it is ordered that the judgment of the Civil District Court in the case of Shushan Brothers & Company vs. Drennan and Hillcoat et al., be affirmed at appellant's cost.

It is further ordered that the judgment of the Civil District Court in the matter of Julius S. Cohn & Company, assignee, Simmons Cohn & Co. vs. Drennan & Hillcoat et al., be reversed in so far as it dismisses plaintiff's suit against Ralph W. Hillcoat and it is now ordered that there be judgment in plaintiff's favor as prayed for in this original petition with costs of both courts.