Mr. Justice Swayne
(with whom concurred the Chief Justice and Clifford and Strong-, JJ.)
delivered the opinion of the court:
This is an appeal from the judgment of the Court of Claims. The decision was against the petitioner, and he has brought the case here for review. The only inquiry presented for our consideration is when tlie proclamation, which is the hinge of the controversy, took effect. The question arises on the third finding of the Court of Claims, which is as follows: “ The proclamation of the President of June .24,1865, was not published in the newspapers until the morning of the 27th of that month ; nor was it published or promulgated anywhere, or in any form,, prior to said last-named day, unless its being scaled with the seal of the United States, in the Department of State, was a publication or promulgation thereof.”
There is no act of Congress, and nothing to be found in American jurisprudence, which bears very directly on the subject. In the English law the instrument is thus defined: “Proclamation — proclamatio—is a notice publicly given of anything whereof the king thinks fit to advertise his subjects. And so it is used, 7 Rich. 2, cap. 6.” (Cowel’s Law Dic.)
Proclamations for various purposes are mentioned in the English authorities, but it could serve no useful end particularly to refer to them. (2 Jacobs’ Law Dic., 311.) In England they must be under the great seal. (7 Comyn., 31.) If their existence is intended to be denied, the proper plea is nul tiel record. — Kely v. Manning, (Cro. Car., 180;) Howard v. Slater, (2 Roll. R., 172.) It is a part of the king’s prerogative to issue them. (1 Black. Com.; 70.) It is a criminal offense to issue them without authority. (Bro. Ab., fol. 160; 17 Viner, 199.) By the 31 of Hen. VIII, ch. 8, it was enacted that the king, with the advice of his council, might issue proclamations denouncing pains and penalties, and that such proclamations should have the force of acts of Parliament. This statute, so fraught with evil to the liberties of the subject, was repealed a few years later in the successful reign of Edward VI, and during *173 bis minority. A very careful and learned writer says: <CA proclamation must be under the great seal, and if denied, is to 1)6 tried by the record thereof. Tt is, of course, necessary to be published, in order that the people may be apprised, of its existence, and may be enabled to perform the injunctions it contains. In the absence of any express authorities it should seem that if the proclamation be under the great seal it need not be made by any particular class of individuals or in any particular manner or place, and that it would suffice if it were made by any on,e under the king’s authority in the market-place or public street of each large town. It always appears in the gazette.” (Chitty on Prerogatives, 106.) This is the only authority on the subject here under consideration which our-researches have enabled us to find. The writer refers to no other author and to no adjudicated cases in support of his views. The third section of the Documentary Evidence Aet (8 and 9 Victoria, chap. 113) declares that the copy of a proclamation purporting to be printed by the Queen’s printer-shall be sufficient proof of the existence of the original. Under the circumstances it may be well to look to the analogy afforded by the promulgation of statutes. At the common law every act of Parliament, unless a different time were fixed, took effect from the first'day of the session, no matter how long the session or when the aet was passed. This rule was applied to acts punishing offenses of all grades, including those which were capital, and even attaints! The authorities on the subject are learnedly collected by Mr. Justice Story in the case of the Brig Ann, (1 Gallison, 64.) Such was the law in England until the passage of the 33d George III, ch. 13, which declared that the royal assent should be indorsed, and that the act should take effect only from that time.
The Aet July 27, 1789, see. 2, declares that whenever a bill, order, resolution, or vote of the Senate and House of Representatives has been signed by the President, or not having been returned by him with his objections, shall have become a law, it shali forthwith thereafter be received by the Secretary of State from the President: and that whenever a bill, order, resolution, or vote — having been returned by the President with his objections — shall have been approved by two-thirds of both Houses of Congress, and become a law, it shall be received by the Secretary from the President of the Senate, or. Speaker of the *174 House of Bepresentatives, in whichsoever House it shall have been last approved; and it is made his duty carefully to preserve the originals. The first section of the Act April 20,1818, directs that the Secretary shall publish all acts and resolutions currently, as they are passed, in newspapers. The fourth section provides that he shall cause to bo published at the close of every session of Congress copies of the acts of Congress at large, including all amendments to the Constitution adopted, and all public treaties ratified, since the last publication of the laws.
Both those acts are silent as to proclamations, and we have been unable to find any provision in the laws of Congress touching the manner of their original promulgation or their subsequent printing and preservation. Numerous acts were passed during the late war authorizing proclamations to be issued, but they are silent upon these subjects. In the Act July 10, 1881, under which the proclamation here in question was issued, the language is, “itinay and shall be lawful for the President by proclamation to declare,” &c. (12 Stat., 257.) In the Act June 22, 1861, the language is, “ the President shall from time to time issue his proclamation.” (12 Stat., 268.) In the Act December 31,1862, the language is the same as in the act first referred to. (12 Stat., 633.) In the Act March 3,1863, the language is, “the President shall issue his proclamation declaring,” &c. (12 Stat., 735.) We have nowhere found in the legislation of Congress any material departure from this formula, nor anything further in any wise affecting the question before us.
We know that the established usage is to publish proclamations with the laws and resolutions of Congress currently in the newspapers, and in the same volume with those laws aud resolutions at the end of the session.
There is no statute fixing the time when acts of Congress shall take effect, but it is settled that where no other time is prescribed they take effect from their date. — Mathews v. Zane, (7 Wheat., 211.) Where the language employed is “from and after the passing of this act,” the same result follows. The act becomes effectual upon the day of its date. In such cases it is operative from the first moment of that day. Fractions of the day are not recognized. An inquiry involving that subject is inadmissible.— Wellman’s Case, (20 Vermont, 653.) The subject is there examined with learning and ability. (See, also, *175 How’s Case, (21 Vermont, 619;) The Ann, (1 Gall., 62;) Arnold v. The United States, (9 Cranch, 104;) 1 Kent’s Com., 457.
Publishing by outcry in the market-place and streets of towns, as suggested by Chitty, has, we apprehend, fallen into disuse in England. It is certainly unknown in this country. While it is said the proclamation always appears in the Gazette, he does not say that it cannot become operative until promulgated in that way. As no mode of publication is prescribed, and those suggested will answer, we do not see why applying the seal and depositing the instrument in the office of the Secretary of State may not be held to have the same effect. The President and Secretary have then completed their work. It is there amidst the archives of the nation. The laws of Congress are placed there. All persons desiring it can have access and procure authenticated copies of both. The President signs and the Secretary of State seals and attests the proclamation. The President and Congress make the laws. Both are intended to be published in the newspapers and in book-form. Acts take effect before they are printed or published. Why should not the same rule apply to proclamations ? We see no solid reason for making a distinction. If it be objected that the proclamation may not then be known to many of those to be affected by it, the remark applies with equal force to statutes. The latter taking effect by relation from the beginning of the day of their date, may thus become operative from a period earlier than that of their approval by the President, and indeed earlier than that at which they received the requisite legislative sanction. The legislative action may all occur in the latter part of the day of their approval. The approval must necessarily be still later. It may be added, as to both statutes and proclamations, that, even after publication in the newspapers, there are in our country large districts of territory where actual knowledge does not usually penetrate, through that or any other channel of communication, until a considerably later period. It will hardly be contended that proclamations should take effect at different times, in different places, according to the speedier or less speedy means of knowledge in such places respectively.
But the gravest objection to the test of publication contended for by the defendant in error remains to be considered. It would make the time of taking effect depend upon extraneous evidence, which might be conflicting, and might not be pre *176 served. The date is an unvarying guide. If that be departed from, tbe subject may be one of indefinitely recurring litigation. Tbe result in one case would be no bar in another, if the parties were different. Upon whom would rest the burden of proof, the party alleging or the party denying the fact of publication 1 If, after a lapse of years, the proof were that a proclamation purporting to be published by authority was seen at a specified time in a newspaper, but the paper were lost and its date could not be shown, would the proclamation be held to taire effect only from the time it was so seen by the witness Suppose in the distant future no proof of publication could be found, would all the rights which had grown up under it be lost, unless protected by the rule of limitations 1 Would the instrument itself be a nullity Would an exemplified copy from the x>roper office be an insufficient answer to tbe plea of nul tiél record f According to the views maintained by the counsel for the plaintiff in error, all these questions must be answered in the affirmative. The only way to guard against these mischiefs is to apply the same rule of presumption to proclamations that is applied to statutes, that is, that they had a valid existence on the day of their date, and to permit no inquiry upon the subject. Conceding publication to be necessary, the officer upon whom rests the duty of making it should be conclusively presumed to have promptly and properly discharged that duty. If the proclamation here involved were a resolution or an act of Congress, no such question could arise. That “ a proclamation,” * * “if denied, is to be tried by the record thereof,n and that in such case the proper plea is nul tiel record, seems to be conclusive upon the subject.
It would be unfit and unsafe to allow the commencement of the effect whenever the question arises, whether at a near or a distant time, to depend upon the uncertainty of parol proof, or upon anything extrinsic to the instrument itself, as found in the archives of the nation.
The judgment of the Court of Claims is reversed, and the case will be remanded with directions to enter a judgment in favor of the appellant.
Mr. Justice Davis. I concur in the judgment in this case.