Nott, J.,
dissenting:
Privity between the parties and a consideration for the promise are necessary to support an action in assumpsit; and, ordinarily, there must be u either an immediate benefit to the party promising or a loss to the person to whom the promise was made,” to constitute a consideration. In this case there was no direct privity between the present parties, the claimant and defendants, for the sale was not by the claimant, but by another, in whom the title and possession of the purchased property were, and no consideration passed from .the claimant either to the defendants or to the vendor to support the promise declared upon. If the defendants had paid the purchase-money to the claimant before the vendor’s revocation, unquestionabíyit would have been a imyment by appointment, discharging the debt; or if it appeared that the claimant at the time and as a part of the transaction. had parted with a valuable .consideration to the vendor or had relinquished his debt, the law would imply that he did so at the request of the purchaser, and the consideration would import a privity of contract between them and be as *225 effectual as though it bad passéd directly to tbe defendants. But bere nothing' appears to bare passed from or been relin-quisbed by tbe claimant. He paid nothing to vendor nor to vendee; be did not discharge tbe pre-existing debt; be did not even suspend bis right of action upon it. Immediately after tbe transaction be was as free to bring a suit against tbe vendor as before. He wholly fails to show that be did anything or refrained from doing anything in consequence of tbe transaction; and before suit brought upon tbe tripartite agreement, if such it were, tbe vendor revoked tbe authority to pay tbe purchase-money to the claimant, and asserted a right to recover it himself. Nevertheless, there is an exceptional class of cases which uphold similar transactions between three persons, but they are so involved and contradictory as to require a somewhat extended examination of the law.
The controlling facts of the case, stated in a word, are these: The defendants hold in their hands money, viz, the purchase-money of the threshing-machine bought by them; the vendor at the time of sale directed that this money should be paid to his creditor then present, viz, the claimant; and the defendants, in consideration of the sale, promised and agreed so to pay it, viz, by the voucher issued to the claimant-on the receipt of the purchased property. The resulting question is, whether this consideration moving from the vendor to the defendants, coupled with his request and their promise to pay the purchase-money to their vendor’s creditor the claimant established such privity in law as will enable him to maintain an action against them on their promise.
The earliest decision upon this subject is Dutton v. Poole (1 Vent. 318). A father, designing to raise a marriage portion for his daughter, forbore to cut certain timber for that purpose in consideration of the defendant’s agreeing that he would pay to the daughter £1,000. He failing to pay, she brought her action against him, setting up his promise and alleging the transaction with her father as a consideration to support it. The court held that the action would lié, but said, -‘It might be another case if the money had been to have been paid to a stranger.” Manifestly the doubt suggested went to the equitable interest of the daughter in the transaction; for the only effect that the relation of parent and child could have on the case was in giving the daughter the same moral claim for her *226 marriage portion, that a creditor would have for the payment of a pre-existing debt.
Fifty years later a caséis reported in Strange (Crow v. Rogers, 1 Strange, 592), where the doctrine of Button v. Boole was overruled, and it was held that an action would not he, because the plaintiff was a stranger to the transaction.
At a still later day the case in Ventris seems to have been remembered and the case in Strange overlooked. Mr. Justice Buffer (1 Bos. & Pul., 101., note b; 3 id,., 147, Day’s ed., note a, p. 149); Lord Loughborough (Israel v. Douglas, 1 H. Blacks., 239); Lord Mansfield (Hawkes v. Saunders, 1 Cowp., 290), and Lord Tenterden (2 Dow. & Ry., 277), are all recorded as holding in effect that “if one person make a promise to another for the benefit of a third, that third may maintain an action upon it.”
Lord Mansfield, in Hawkes v. Saunders (1 Cowp., 290), states with characteristic clearness and strength the principle upon which the decisions rest. “The rule laid down at the bar” “ goes upon a very narrow ground indeed, namely: that, to make a consideration to support an assumpsit, there must be either an immediate benefit to the partly promising or a loss to the person to whom the promise was made. I cannot agree to that being the only ground of consideration sufficient to raise an as-sumpsit. A legal or equitable duty is a sufficient consideration for an actual promise. When aman is under amoral obligation, which no court of law or equity can enforce, and promises, the honesty and rectitude of the thing is a consideration.”
Later still, the English courts traveled back toward the primitive idea of privity and consideration, that the third person must give a consideration if he would make obligatory the promise; that to bind the others, he must be bound himself. (3 Barn. & Cres., 591; 4 id., 163; 4 Barn. & Adol., 433; 5 Adol. & Ellis, 548).
The obscure condition of the law in England on this point is illustrated by the fact that in Chitty’s Pleadings (vol. 1, p. 5), it is stated one way — that “when a contract not under seal is made with A to pay B a sum of money, B may sustain an action in his own name ”; and in Ohitty, jun., on Contracts (ed. 1842, p. 53), it is stated the other — that it is now a rule of law that the consideration for a promise must move from the plaintiff.
Lathe courts of New York and Massachusetts, on the contrary, the subject has been carefully examined; and learned opinions *227 have been given both for and against the principle of upholding in these tripartite agreements a constructive privity, based upon a moral consideration.
The leading case in New York (thoiigh not the first) is Farley v. Cleveland (4 Cow. 432), a case closely resembling the one now before ns, except that there was no revocation by the original debtor, the vendor of the propert3. It ivas agreed that A should deliver hay of the value of $150 to 23, and that B should pay A’s note for $100, then due in the hands of C. A carried out his portion of the arrangement and shortly after absconded and left the State. B, finding that there would be little likelihood of his vendor vexing him, refused to pay 0, and hoped thereby to escape payment altogether. C, finding that his only practicable recourse was against B, brought his action, to which B answered that there was no privity between them, and that C had given no consideration to support the promise which he set up. The Supreme Court of New York held that the consideration moving to the defendant (the hay) was sufficient to support the action, and the Court of Errors, though without an opinion, affirmed the judgment. (9 Cow., 639.)
Again, the subject came up in the case of Lawlcer v. Buclclin (2 Denio, 45), a case precisely like the one now before us, and a very learned judge, Mr. Justice Jewett, very fully examined all the authorities that could be found, both adjudged cases and elementary works, and came to the same conclusion, that “ where one person makes a promise to another for the benefit of a third, the third may maintain an action upon it, though the consideration does not move from him.”
This conclusion has hardly been questioned in New York, but in Lawrence v. Fox (20 N. Y., 268) the Court of Appeals carried it much further than it had gone before, which involved a division in the court, and called out a very able and searching-dissenting opinion from Mr. Justice Comstock. Up to that time the New York cases had presented actual agreements between three persons, and in every case the future plaintiff had been one of the agreeing parties; but in Lawrence v. Fox he knew nothing of the arrangement between the other two, and was a stranger in fact, if not in law, to the transaction made for his benefit. The Court of Appeals, however, pushed the doctrine far enough to cover his case, and held that he cotdd adopt the agreement of the other two and maintain an action.
*228 In Hutchings v. Minor (46 N. Y. 456) the same court carried the doctrine till further, and held not only that “where A, for a valid consideration, promises B to pay 0, 0 may maintain an action on the promise, though not privy to the consideration,” but also that, “if no direct promise was made” by A, yet if B “made the request and laid the duty upon him and he did not decline,” “his consent is to be presumed and is equivalent to an express promise.” The decision in Lawrence v. Fox moreover, though made by a divided court, was reaffirmed in Burr v. Burr (24 N. Y. 178), and has been regarded as sound law in a number of subsequent cases. .
The Supreme Court of Massachusetts laid down the same rule at an early day (Goodwin v. Gilbert, 9 Mass. 510), and it has been reiterated in a number of cases. The most notable of these decisions are that of Chief Justice Parker, in Arnold v. Lyman (17 id., 400); that of Mr. Justice Bigelow, in Brewer v. Dyer (7 Cush., 340); that of Chief Justice Shaw, in Carnegie v. Morrison, 2 Metc., 381), and that of Mr. Justice Metcalf, in Mellen v. Whipple (1 Gray, 317).
In Brewer v. Dyer (7 Cush., 340) Mr. Justice Bigelow holds that where there is some property or thing in the hands of the defendant which should be applied to the demand of the plaintiff, the party does not recover so much upon the express promise as “upon the broader and more satisfactory basis that the law operating on the act of the x>arties creates the duty, establishes the privity, and implies the promise.” In Carnegie v. Morrison (2 Metc., 381) Chief Justice Shaw fully examines the question, and adoxits the old case in Yentris (Dutton v. Pool) as good law. In Mellen v. Whipple (1 Gray, 317) the court, unlike the New York Court of Appeals, evinces a strong determination to carry the doctrine of constructive x>rivity no further than previous Massachusetts decisions require; but Mr. Justice Metcalf) in a very clear opinion, classifies to a certain extent the former cases, and brings such cases as the claimant’s within the established classes.
Parsons, after a brief statement of the conflicting American and English decisions, sums up the.matter by saying, “In this country the right of a third x>arty to bring an action on a promise made to another, for his benefit, seems to be somewhat more positively asserted $ and we think it would be safe to consider this a prevailing rule with us.” (1 Parsons’s Contracts, 467.) *229 Nevertheless, I should be inclined to regard the question as still an open one in the Federal courts, were'-it not that the Supreme Court, in Tiernan v. Jackson (5 Peters, 579, 598), cited with approval the cases in Bosanqnet & Puller and one of the New York decisions (Schemerhorn v. Vanclerheyden, 1 Johns., 139), and said: “The case of Farmer v. Russell (1 Bos. & Pul., 296), so far as the point before us is concerned, asserts the principle that if A receive money from B to pay to C, it is money had and received for the use of the latter.” (The head-note to Farmer v. Bussell, it may be noted, reads as follows: “If A receive money of B to the irse of C, it may be recovered by C-in an action for money had and received, though the consideration on which B paid it be illegal.”) And the Supreme Court also declared the principle to be this: that “the receipt of the money for the use of a particular person necessarily imported a promise or obligation to hold it in privity for such person.”
There is, however, an element of difference between the claimants case and those hereinbefore referred to which deserves notice. In this case the vendor of the property revoked, so far as he could, the authority to the defendants to pay the purchase-money to the claimant, and this revocation was made before the suit was brought. In not one of thp numerous'cases which I have examined does this element of revocation appear. In all of them the attempt to evade the tripartite agreement was entirely on the part of the defendant, who, so far as the cases disclose, held money which the vendor wished paid to the plaintiff. There is, indeed one case in the New York reports (Kelly v. Roberts, 40 N. Y., 434, 441) which was sought to be brought under the rule of Lawrence ¶. Fox, where A, a creditor, told B, his debtor, to pay C, to whom he owed money, and afterward revoked the authority. But there no present consideration passed between A and B, nor was C a party to the agreement, nor did he give his assent to it; and the case manifestly, as the court points out, would not come under the decisions, apart from any question of revocation. The transaction was nudum pactum between all the parties and bound none.
There is a seeming failure of obligation on the defendants here to pay the claimant when the vendor bids them not to do so; yet if the reasoning of Mr. Justice Bigelow, in Brewer v. Dyer (7 Cush., 340), that “the law, operating on the act of the parties, creates the duty, establishes the privity, and implies *230 the promise,” is sound, it is impossible to hold that one of the parties, at his option, can shake off the duty, destroy the privity, and annul the promise. A privity once legally established continues until the transaction out of which it springs is consummated. Assuredly, what the law established as a binding contract between the three parties to the transaction could not be rescinded at the will of one or two of them. Won constat but that the third person, the claimant here, had some lien upon the property transferred, which he .might have asserted in equity. Won constat but that he might have attached it for his own debt owing from the vendor; certainly the third person in such cases is morally prevented by the arrangement from exercising the diligence against the original debtor which he might otherwise have exercised; evidently the principal debtor might gain time by such an arrangement, and having gained it, turn around and put his creditor to the further delay and cost of a suit at law. The rule is founded on equity and sound morality; it is designed to prevent needless litigation and circuity of action; and if it can be maintained at the common law, it cannot be frustrated or evaded by any one to whom it is applicable.
Under these American decisions an ordinary defendant would be held to have money in his hands which ex aequo et bono he should pay to the claimant. There are decisions of the Supreme Court which hold that an action as for money had and received will lie against the Government, as against an ordinary party, where money has been paid into the Treasury, which ex cequo et bono the claimant should recover back. La Peyre’s Case (8 C. Cls. R., 165); Worton Case; Boston Bcmlcs Gases (post). I kuow of no statute which forbids the agents of the Government from dealing with two men instead of one, nor from agreeing to pay for things purchased in the way the vendor requested and the contract prescribed.
My first impressions in this case were decidedly against the claimant $ but I reach a favorable conclusion now, after a careful examination of all the authorities I have been able to find, and I come to this conclusion with the less reluctance, because the defendants have the right to review it in the Supreme Court, which the claimant has not.
Peck, J., was absent when the case was decided, but agreed in the above conclusion that the claimant should recover.