EASTERN DIS.
*May*, 1833.

McDONALD, SURVIVING PARTNER, &c. *vs.* MILLAUDON.

M'DONALD,
SURVIVING
PARTNER, ETC.
*vs.*
MILLAUDON.

5L 403
47 1392

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

Where the plaintiff claims by a contract, the general issue puts him on the proof of it, but where he sues in a representative capacity created by the law, it does not.

Previously to the late amendments to the Code, partnership might be implied as to third persons.

The terms "laws and usages of commerce" in the *Civil Code*, were intended to refer to the laws and usages of the other states, unless those laws and usages conflicted with the positive legislation of Spain or were in opposition local usages prevailing in this state.

If merchandise is sold by the consignee, his responsibility is the same whether it has or has not come into his possession.

In 1822, the late firm of McDonald & Ridgely, trading in the city of Baltimore, of which the plaintiff sues as the surviving partner, consigned a quantity of merchandise to the late firm of W. & D. Flower, of the city of New-Orleans. It is alleged that in this firm the defendant was a dormant partner. A great portion of the goods were sold, and an account of the sales was furnished to the consignors, by which it appeared there was due them the sum of one thousand two hundred and twenty-six dollars and six cents. To recover this sum, with interest, this action was brought.

The defendant denied generally the allegations of the petition, and especially his alleged partnership with W. & D. Flower. He pleaded prescription.

The judge *a quo* decided that the contract between W. & D. Flower and defendant, was not one of partnership, but of a sale of a certain part of the profits, which is permitted by the *La. Code*, art. 2786. Judgment having been rendered for the defendant, the plaintiff appealed.

*Worthington*, for appellant, maintained that:

1. The defendant became a partner in the house of W &. D. Flower, and liable as such to creditors *of* the said firm in

EASTERN DIS. consequence of an implied agreement to receive one-third
*May*, 1833. of the profits of said concern, which we prove he afterwards
M'DONALD, received. *Gow*, 15, 22; 1 *Montagu on Partnership*, 2, 11;
SURVIVING
PARTNER, ETC. 2 *William Blackstone's Rep.* 998; 1 *Henry Blackstone*, 37;
*vs.*
MILLAUDON. 2 *ibid.* 243; 15 *Johns. Rep.* 422; 6 *Sergeant & Rawle*, 259;
3 *N. S.* 39; 6 *ibid.* 49; 5 *Peters' Rep*; 3 *Har. & Johns.* 505.

2. The agreement constituted no sale of profits. See
definition of sale in Pothier and in the Code. The article
2780 does not apply; the partnership having been formed
in 1823.

*Grymes*, for appellee.

The opinion of the court, MATHEWS, J. absent, was
delivered by PORTER, J.

The defendant is sued as a dormant partner in the firm of
W. & D. Flower. It is alleged that he received a share in
the profits of the partnership, and that in consequence
thereof he is responsible for its debts. The petition states,
that in the year 1822, the firm of McDonald & Ridgley
consigned merchandise to the house of W. & D. Flower, to
be sold on their account; that sales were made of these goods,
and that the sum of twelve hundred and twenty-six dollars
and six cents is due to the petitioner.

The answer denies the allegations in the petiton, and avers,
that the defendant is in no manner liable to the plaintiff; it
also contains the plea of prescription.

The judge of the first instance decided, that the defendant
was not a partner as alleged in the petition, and gave judg-
ment against the plaintiff. From that judgment, this appeal
is taken.

A question has been raised on the argument here, which as
far as we can gather from the proceedings, was not made in
the court below. It is contended that the general issue pre-
sented by the answer, puts the plaintiff on the proof of his
right to sue as surviving partner, and that having failed to give
that proof, he should be non-suited.

The uniform course of decision in this court has been, to require a special plea, when the plaintiff's right to sue in a representative ˏcapacity is contested. When our attention was first called to the objection made in this case, we thought it of more weight than on further reflection we consider it entitled to. We are unable to distinguish between the representative character of the heir, executor or curator, and that of the surviving partner who claims the right to collect the debts and settle the affairs of the partnership. They are all legal assignees; that is, they are authorised to collect the debt in which the deceased had an interest by virtue of a power conferred by law, or a right cast on them by the death of the party in whom the legal title was vested. The true distinction in relation to this matter we take to be, that where the plaintiff claims through a contract, the general issue puts him on the proof of it; where he sues in a representative capacity created by the law, it does not.

*Eastern Dis.*
*May, 1833.*

M'DONALD
SURVIVING
PARTNER, ETC
*vs.*
MILLAUDON.

Where the plaintiff claims by a contract, the general issue puts him on the proof of it, but where he sues in a representative capacity created by the law, it does not.

The agreement from which the defendant is charged to be responsible for the debts of W. & D. Flower, was reduced to writing, and has been produced in evidence. The first part of it relates to the manner and time the defendant was to advance to the firm the sum of twenty thousand dollars. The clause of the contract, which it is material in the decision of this cause, is in the following words: " And the said W. & D. Flower, on their part, engage and bind themselves to pay to the said Laurent Millaudon, an interest at the rate of ten per centum per annum, on any or all sums of money so received by them of the said Millaudon, from the period from which they shall have received the same, until they shall refund and repay it to him. Which time of reimbursement will not exceed the first day of July, 1825; the interest to be settled and paid up yearly, on the first day of July ˏof each year, to Laurent Millaudon, until the three years have expired; and in consideration of the sum so furnished, or to be furnished by the said Laurent Millaudon to the said W. & D. Flower, viz: by his endorsements of their notes of accommodation as aforesaid, and by the advances of money as before mentioned, the whole amounting to twenty

Eastern Dis.
*May*, 1833.
══════════
M'DONALD,
SURVIVING
PARTNER, ETC.
*vs.*
MILLAUDON.

thousand dollars, the said **W. & D.** Flower will give to Lau-rent Millaudon their obligation secured by Henry Flower, James Flower, Joseph L. Finlay and J. C. Faulkner, and also one-third part of the profits of the new establishment, under the firm of **W. & D.** Flower, which is to take place on the first day of July next, and continue until the first of July, 1825, of which copies are to be furnished each of the parties." This agreement is signed by Millaudon and **W. & D.** Flower.

The commercial law of the United States, or rather of our sister states, would hold the defendant liable for the debts of the partnership on a contract such as this. The dormant partner is made responsible to the creditors of the firm as soon as he is discovered, whether they had a knowledge or not that he was a member of it when they contracted, and a right given to partake in the profits constitutes him a partner. It is held that such a right in itself is inconsistent with any other character; that the profits of the business create a fund which all who contract with the partnership have a right to look to for payment; and that it is a fraud on those who deal with it, for any to abstract that fund, and at the same time escape from responsibility from those contracts by which that fund was created.

Whether such be the rule of *our* law, is the main question in the cause.

But before examining that question, another point raised by the defendant must be disposed of. He contends that the agreement by which **W. & D.** Flower promised to let Millaudon have a share of the profits, was nothing more than a contract of sale or exchange. He refers to the terms of the agreement in which it is said that in consideration of the money to be advanced by him, the endorsements to be furnished, &c. they were to give their notes jointly with other persons, and the one-third of the profits of the establishment. Whether these stipulations, if there were no other in the act, would make the contract one of sale, or would be considered nothing more than a device to disguise usury, we need not stop to inquire. In assuming the position just noticed, the

Eastern Dis.
*May,* 1833.

M'DONALD,
SURVIVING
PARTNER, ETC.
*vs.*
MILLAUDON.

defendant has wholly overlooked a previous part of the agreement, by which it is expressly covenanted, that he was to be paid the principal advanced by him, with ten per centum interest. As this was all the law permitted him to receive for the advances made by him, the money could not be in addition, a consideration for either sale or exchange. Hence it is clear he gave nothing for the profits, and to constitute either sale or exchange, one thing must be given for another.

This brings us to the main question in the cause. It is contended that in Louisiana there can be no such thing as an implied partnership; the law contemplates and requires an agreement written, or verbal, to that effect; the assent of the parties to the existence of the partnership is necessary to its formation.

If the law of Louisiana be so, it should be immediately changed by the legislature; for no state of things could be readily conceived, more injurious to the public interests, which would more embarrass commercial transactions, or furnish greater facilities to the commission of fraud. No one could then deal safely with a firm until he examined their articles of partnership. Men might trade under a partnership name, and by a secret agreement among themselves, escape from the responsibility which attached to the character in which they held themselves out to the world. The law is not so understood by the commercial world, and the general understanding on the subject, this court believes is conformable to law. If there even existed no other rules in relation to partnership but those found in the *Civil Code,* which was in force at the time this transaction took place, it would be difficult to come to the conclusion to which the argument offered by the defendant leads us. It is true, that work says, an agreement of the kind is formed by consent alone. But may not consent be proved by acts as well as by words? Are not the acts in truth the better proof, when they are irreconcilable with any other state of things than a partnership? Toullier tells us it is not merely by words or by writings, that consent is shown, it may be proved by signs, by acts, and sometimes even by silence. The permission to

EESTERN DIS.
May, 1833.
—————
M'DONALD,
SURVIVING
PARTNER, ETC.
vs.
MILLAUDON.

make this contract either verbally or in writing, is understood by the court, as nothing more than an enunciation of the rule that the agreement need not be reduced to writing. It would be giving an effect to the argument *contrario sensu*, of which we are not aware that any example exists, were we to conclude from these expressions that the legislature intended to introduce a rule of evidence in regard to this contract, which does not exist in relation to any other that may be proved by parol.

But admitting that such was the rule of law as between the partners, there is no foundation whatever to apply it to third parties who trade with them. The general rule is, that every man is bound by the character or quality which he assumes in his contracts. If parties hold themselves out to the world as partners, they are bound as partners by their acts, no matter what may be the agreement between themselves.

<span style="float:left">Previously to the late amendments to the Code, partnership might be implied as to third persons.</span>

We are satisfied, therefore, that as to third persons there might have been an implied partnership under our former law. The late amendments to our Code expressly recognise the responsibility which may be incurred, by acts from which such an implication can be made. *La. Code*, 2820.

But this case cannot be decided alone on the provisions found in the *Civil Code* on partnership. That work guarded against the inference of the non-existence of other rules to which courts should recur for the decision of cases before them, by a declaration that its provisions " apply to commercial partnerships inasmuch only as they do not contain any thing contrary to the laws and usages of commerce." When the tribunals of this country were first called on to interpret this, and a similar provision in our law, there was

<span style="float:left">The terms, "laws and usages of commerce," in the *Civil Code* were intended to refer to the laws and usages of the other states, unless those laws and usages conflicted with the positive legislation of Spain, or were in opposition to local usages prevailing in this state.</span>

great doubt to what laws and usages of commerce, reference was thus made. It was finally concluded, though not without hesitation, that they must have had in view the usages and laws prevailing in our sister states, unless these laws and usages conflicted with the positive legislation of Spain, or were in opposition to local usages prevailing in Louisiana. Whatever difficulty attended this decision when first made, there can be none in following it now. A considerable time

has elapsed since it was made public.   Contracts almost innumerable have been executed in reference to it.   Rights have been repeatedly adjusted under its authority.   Property to a large amount acquired in relation to it; and stranger than all these, the legislature of the state by their silence on the subject, have authorised the belief that the court correctly interpreted the previous expression of their will.   We must, therefore, look to the law merchant of the United States, for the consequences attending acts such as are proved in this case, on the defendant.   Then, as has been already stated, the question is not susceptible of doubt in relation to strangers contracting with the firm, though as between the parties themselves a different rule may prevail, or one at least modified in many important particulars.   It is unnecessary to cite all the cases in which the doctrine has been recognised.   One will suffice.   The Supreme Court of the United States has lately declared the rule to be perfectly settled, that a party who shares in the profits, although his name be not in the firm, is responsible for its debts.   In the present case the defendant contracted for these profits, and received them.   5 *Peters*, 561.

The agreement was made in 1822, and we have examined the Spanish law to see if there were any positive provisions in it which forbade a partnership being implied from the acts of the parties.   We find none such.   On the contrary, there is an express law of the Partidas, that if a man is to have a share in the profits of a partnership, he must bear his proportion of the losses.   The author of the *Curia Phillipica*, puts several instances from which such a connexion may be inferred.

A minor objection remains to be noticed.   It is urged that there is no evidence the goods sold came into the hands of W. & D. Flower, after the time the partnership commenced; and that if they were previously delivered, the defendant can in no event be responsible.   We think on the contrary, that it is immaterial when the goods reached them, if (as was the case here,) the firm disposed of them.   No matter how irregular the taking possession by the partnership may have been, the owners of the goods had a right to approve of the act, and call on the factors for the proceeds of the sale.

If merchandise is sold by the consignee, his responsibility is the same whether it has or has not come into his possession.

52

EASTERN DIS. *May*, 1833.

PULLEY *vs.*

SPANGENBERG, COMLY APPELLANT.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed; and it is further ordered and decreed, that the plaintiff do recover of the defendant the sum of twelve hundred and twenty dollars and six cents, with interest from judicial demand until paid, and costs in both courts.