190 So. 342

**BRANDIN SLATE CO., Inc., v.
BENNETT et al.**

No. 34851.

May 29, 1939.

Rehearing Denied June 26, 1939.

Weiss & Weiss, of New Orleans, for appellant.

Ed. J. deVerges, of New Orleans, for appellee.

HIGGINS, Justice.

The plaintiff instituted this action against the defendants, jointly, severally and in solido, to recover the sum of $3,096.33 for merchandise sold and delivered to them on an open account as members of James W. Bennett Roofing Company, a commercial co-partnership, or an ordinary partnership, and against Albert A. Wilson as guarantor of the account in the sum of $2,500; and in the alternative, against James W. Bennett, one of the alleged partners, individually, for $3,096.33, and against Albert A. Wilson, the other alleged partner, individually, as guarantor of the account, under a written continuing guaranty in the sum of $2,500.

James W. Bennett, although personally served with citation, did not answer and judgment, by default, was entered against him. He did not appeal.

Albert A. Wilson filed exceptions of no right and no cause of action and improper joinder of demands, which were overruled. He then filed an answer, with reservation of his exceptions, and denied liability, averring that there was no partnership existing between him and Bennett and specially pleaded that the alleged guaranty was a forgery; and that there had been improper imputations of payments and credits on the open account.

There was judgment in favor of the plaintiff and against the defendants, in accordance with the alternative prayer of the petition. The defendant Wilson appealed.

The plaintiff answered the appeal, praying that the judgment be amended to hold the defendants jointly, severally and in solido, liable for the full amount of the claim.

The exceptions of no right and no cause of action have been abandoned.

The exception of inconsistent causes of action is predicated on the theory that the right of action against Wilson as a partner is inconsistent and exclusive of the cause of action against him as a guarantor.

In the case of Gladney's Inc. v. Louisiana Magazine, La.App., 156 So. 659, 158 So. 32, it was held that the joinder in one petition of two alternative demands against the defendant, as a partner and as an individual, were not inconsistent where the

parties and the facts were the same on both demands and the alternative theories were resorted to merely for the purpose of adapting the demand to the ultimate view of the court.

The exception was therefore properly overruled.

The record shows that James W. Bennett had been formerly employed by the plaintiff, which was engaged in the business of selling roofing materials, and that he resigned his position to engage in business as a roofing contractor. He had previously borrowed money from a loan company with which Albert A. Wilson was identified and, lacking the necessary capital to enter business, discussed the matter with Wilson, with the result that they signed the following contract on June 18, 1934:

> "New Orleans, La.,
> "June 18, 1934.

"An agreement or contract between J. W. Bennett, Party of the First Part, and A. A. Wilson, Party of the Second Part, which provides: That the Party of the First Part desires to engage in the business of building, constructing and repairing of roofs, commonly known as a roofing contractor and not having the necessary capital to thus engage in the above mentioned enterprise covenants with the Party of the Second Part to furnish the Party of the First Part with necessary capital to engage in the aforesaid business. Party of the Second Part agrees to furnish a sum of money not exceeding Eight Hundred Dollars ($800.00) as capital hereinbefore mentioned. In return for this advance Party of First Part agrees to reimburse Party of Second Part as follows: Party of First Part is to receive One Hundred dollars ($100.00) per month out of net profits of his business, as living expenses and all profits in excess of this sum is to be set aside monthly for the purpose of establishing a special fund equal to the amount advanced by Party of Second Part to Party of First Part and this special fund may be drawn upon by Party of Second Part from time to time until the amount so drawn equals the sum advanced to Party of First Part. And further in return for the above stated advance of capital by Party of Second Part to Party of First Part, Party of First Part agrees to give Party of Second Part as remuneration for capital advanced one half of net profits accruing from the before mentioned business after the amount advanced by Party of Second Part has been repaid by Party of First Part in the manner of payment as above set forth. Party of Second Part may from time to time furnish Party of First Part with roofing material in addition to said sum of money. Said material to be paid for by Party of First Part on completion and payment of work or job for which said material has been used. Cost of material will be invoice price from factory or jobber without discount.

"This is not a partnership agreement and the terms of this agreement may be altered or terminated by mutual consent or by either party giving notice in writing to the other. In the case of the latter neither party will terminate the agreement

abruptly and without due regard to the rights of the other and will endeavor to work as little hardship on the other as circumstances permit.

> "(Signed)   J. W. Bennett
> "(Signed)   A. A. Wilson

"Witness:   G. C. Moore."

This document was never recorded or registered.

With the money advanced by Wilson, Bennett began operations as a roofing contractor under the name of James W. Bennett or the James W. Bennett Roofing Company. He opened the account with the plaintiff under the latter name and in January 1935, its officers refused to extend further credit unless the account was guaranteed. Wilson wrote in his own handwriting the proposed continuing guaranty and instructed Bennett to have it typewritten. The purported guaranty, dated January 18, 1935, is addressed to the plaintiff, guaranteeing the account up to the sum of $2,500.

Bennett was in the active charge of the business and Wilson occasionally visited the office and each month demanded and received a monthly balance sheet of the company's affairs.

Wilson discovered that Bennett was neglecting and mismanaging the business and that it was in a precarious condition, and, without any legal process, went to the office and took possession of all of the records of the company.

After some negotiations, it was agreed that William M. Bennett, the father of James W. Bennett, would purchase the business and the following act of sale was executed on April 15, 1935, which was duly acknowledged before a notary on that date:

"James W. Bennett and Albert A. Wilson, doing business under the name of James W. Bennett and/or James W. Bennett Roofing Company, do hereby and by these presents sell, transfer, assign, set over, and deliver unto W. M. Bennett of New Orleans, Louisiana, the going and running business operated under said name at 3929 Tulane Avenue;

"This sale and transfer includes all assets and property of said business, including the lease of the premises and the right to occupy same, stock in trade, and merchandise on hand, tools, equipment, furniture and effects, and the like, and the Ford truck and the license thereon, the accounts receivable and all amounts due to said business and any and all claims existing in behalf of said business, and the license for the operation of said business and any other permission or authority to operate the same, and any existing contracts, and also the privilege on the part of W. M. Bennett, if he so desires, to use the name of Bennett Roofing Company or James W. Bennett Roofing Company.

"Said parties agree not to go into business of roofing contracting or similar line, in the City of New Orleans, for a period of five (5) years from this date, under the name of James W. Bennett, or James W. Bennett Roofing Company, or James W. Bennett Contracting Company, or Bennett Roofing Company, or Bennett Roof Contracting Company, or any similar name

that may cause confusion with or be similar to any one of said names.

"The consideration of this sale is the assumption by said W. M. Bennett of any and all debts and obligations due or owing by said business or in connection therewith, for merchandise, accounts payable, guarantees, or otherwise, and from whatever source arising, and said W. M. Bennett binds and obligates himself to protect and defend and hold harmless said James W. Bennett and said Albert A. Wilson against any and all claims against said business from whatever source arising said W. M. Bennett specially agrees to have said Albert A. Wilson released and discharged of the guarantee executed by said Wilson up to the sum of Twenty-Five Hundred and No/100 ($2500.00) Dollars, in favor of A. Brandin Slate Company.

"Said W. M. Bennett specially binds and obligates himself to pay Albert A. Wilson also the sum of Twenty-Six Hundred and Thirty-Two and 57/100 ($2632.57) Dollars, representing money advanced to or invested in said business by said Wilson, said amount to be payable as follows: The assignment to said Wilson of contracts to be immediately entered into and which will aggregate approximately the sum of Four Hundred Thirty-Five and No/100 Dollars the proceeds and payments under which contracts will be paid directly to said Wilson; that for the balance, to-wit, the sum of Twenty-One Hundred Ninety-Seven and 57/100 Dollars there shall be, at the time of the execution of this contract or immediately thereafter, delivered to said Wilson promissory notes in the principal sum of One Hundred and No/100 ($100.00) Dollars each, payable monthly without interest except after maturity, which notes will be signed by said W. M. Bennett and endorsed by said James W. Bennett; upon the full and final payment of said notes and the release of said Wilson from any and all obligations arising from any guarantee executed by him or his connection with said business as partner or otherwise, said Wilson shall cease to have any claim against said business of any sort or character whatsoever; said notes to contain a clause providing that if any one be not paid at maturity, that the remaining notes of the series shall become immediately due and exigible.

"Said Wilson agrees to help said Bennett by throwing whatever work he possibly can to said Bennett and to assist him in every practicable way.

"Said Bennett agrees to permit said Wilson to examine at reasonable times, the books and records of the business of said Bennett, and said Bennett agrees to give said Wilson such reasonable information as said Wilson may from time to time request; these privileges shall, of course, expire when the amount due to said Wilson will have been paid to him and when he will have been released from all obligations as guarantor, partner, or otherwise.

     "(Signed) W. M. Bennett
        "James W. Bennett
        "Albert A. Wilson

"Acknowledged and signed before me this 15th day of April 1935.
        "(Signed)  Sol  Weiss
           "Notary Public."

On the same day, the following document was also signed by the parties:

"April 15, 1935.

"James W. Bennett Roofing Company, a partnership composed of Albert A. Wilson and James W. Bennett, is dissolved as of this date.

"It is agreed that said company owes Albert A. Wilson for advances made by him the sum of Twenty-Six Hundred Thirty-Two and 57/100 ($2632.57) Dollars.

"James W. Bennett certifies that he has stated to no one except A. Brandin Slate Company that Mr. Albert A. Wilson was interested in the business and that no debts are due by the partnership except the amount due to A. Brandin Slate Company, amounting to about Thirty-Two Hundred ($3200.00) Dollars and some small bills which will not exceed about Five Hundred ($500.00) Dollars.

"James W. Bennett further certifies and admits that said business and said partnership does not owe him any money for salary or otherwise and that he gives a full release, acquittance and discharge to said partnership and to said Albert A. Wilson for any and all claims.

"(Signed)    James W. Bennett
"Albert A. Wilson."

■ From the foregoing instruments, the conclusion is inescapable that the parties intended to form a partnership and operated the business as such. It is of no moment whether Wilson contemplated merely to be a silent partner—a partner in commendam—or an ordinary or common partner, because he failed to comply with the provisions of Article 2845 of the Revised Civil Code by recording the articles of co-partnership in the Mortgage Office and is, therefore, liable to third persons the same as an ordinary or common partner. McDonald v. Millaudon, 5 La. 403-407.

It is said that the documents dated April 15, 1935 should be disregarded, because William M. Bennett, the purchaser, insisted that the business be described as a partnership, in order that whatever rights Wilson had therein would also be transferred to him and he would thereby secure a clear title. This contention is far from convincing, because, if Wilson were not a partner, he could very easily have declared that he had no interest in the business, and that whatever rights, title and interest he might have had other than as a creditor were likewise transferred to William M. Bennett. Furthermore, this attempted explanation in no way disposes of the second document of April 15, 1935, dissolving the partnership between James W. Bennett and Albert A. Wilson to which William M. Bennett was not a party.

It is our opinion that the evidence shows that a partnership existed between Bennett and Wilson.

■ As the James W. Bennett Roofing Company was engaged in the contract business of installing and repairing roofs and not engaged in the merchandise business, the partnership was therefore an ordinary one and the partners are liable jointly and not in solido to the plaintiff.

It is further said that we should not conclude that the partnership existed between

these parties because of two bookkeeping entries on June 19th and June 20th, 1934, which show that Wilson advanced $785 cash, in accordance with the agreement, to finance Bennett in the roofing business and also to furnish materials and supplies and that Wilson was to be reimbursed out of the profits. The bookkeeper who made these entries testified that he did not have the agreement before him at the time, but had only a memorandum of it and that he was not attempting to state whether there was a partnership or not. This witness worked part time and was employed only for a period of three months when he voluntarily left the company's services. Surely these entries cannot have the effect of destroying the positive and unequivocal written declarations of the parties themselves at a later date.

The alleged guaranty of Wilson reads as follows:

"January 18, 1935.
"Brandin Slate Co.
  "New Orleans, La.
        "Attention: Mr. E. Lillis.
"Dear Sirs:

"I hereby authorize you to sell J. W. Bennett any roofing material needed by him and on his order not to exceed in value $2500.00 with my guarantee to pay for same on your demand on me should the said J. W. Bennett fail to do so after demand has been on him.

"This guarantee to remain in full force and effect until revoked in writing to you and should it be revoked by me all accounts due you by the said Bennett must be paid or adjusted to your satisfaction.

"For the purpose of obtaining this credit, I hereby state that I have a net worth in excess of $75,000.00.
    "Yours truly,
"AAW/cc    (Signed)    A. A. Wilson
            "Bus. Address:
                "c/o Jno. F. Clark & Co.
        "Residence Address:
            "2236 Dublin Street."

Wilson denied that he signed this document and claims that his signature thereto is a forgery. He admits that he wrote, in his own handwriting, on a yellow sheet of paper, the guaranty as copied on the letter head of the company. He also stated that he signed the two documents of April 15, 1935, and he gave samples of his signature as "A. A. Wilson" and "Albert A. Wilson," at the request of counsel, in the court room.

The trial judge appointed Wheaton Stillson as a handwriting expert, who testified that after having examined and compared the alleged forged signature with the admitted genuine signatures of Wilson, it was his opinion that one and the same individual signed all of the documents. He pointed out that the characteristics in the handwriting were the same and concluded that Wilson signed the guaranty.

No individual personally saw Wilson sign the guaranty. It will be observed that in the act of sale by the members of the partnership to W. M. Bennett, reference is made to the guaranty and the purchaser assumed the responsibility of discharging Wilson's obligations thereunder.

Wilson admitted having received from the plaintiff registered letters dated July

4, 1935, July 15, 1935, October 22, 1935 and November 12, 1935, notifying him that as James W. Bennett had failed to pay the account, the plaintiff was calling upon Wilson to settle the indebtedness under his guaranty. He also concedes that he did not answer the early letters but called upon the president of the plaintiff corporation in response to the last letter and at that time denied that he had signed the guaranty.

It is significant that between April 15, 1935 (when Wilson took cognizance of the guaranty in the sale to William M. Bennett), and November 1935, he did not file with the plaintiff any protest against the genuineness of the guaranty.

It is our opinion that plaintiff proved by a preponderance of the evidence that Wilson did sign the continuing guaranty. Our views with reference to it are in accord with those of the handwriting expert and the trial judge.

Article 326, Code of Practice, provides:

"The defendant, whose signature shall have been proved after his having denied the same, shall be barred from every other defense, and judgment shall be given against him without further proceedings."

■ In the light of the foregoing Article, Wilson's defense of improper imputation of payment is disregarded.

We conclude that Wilson is liable, as an ordinary partner, jointly, with James W. Bennett on the open account to the extent of $3,096.33, which the evidence overwhelmingly established, and that he is further

liable, individually, as a guarantor of this account up to the sum of $2,500.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is amended by granting the plaintiff, Brandin Slate Company, Inc., judgment against James W. Bennett and Albert A. Wilson, jointly, as partners of the James W. Bennett Roofing Co., and by granting the plaintiff, Brandin Slate Company, Inc., judgment against Albert A. Wilson, individually, as guarantor of the above sum of $3,096.33, to the extent of $2,500. In all other respects, the judgment is affirmed. The costs of the district court to be paid by the defendants, the costs of this appeal to be paid by Albert A. Wilson.

FOURNET, J., absent.